**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| **PHYLLIS KAMINOWITZ**, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| **ARX PATIENT SOLUTIONS, LLC, ASSISTRX, INC.,** and **ARX PATIENT SOLUTIONS PHARMACY, LLC** | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff Phyllis Kaminowitz ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action lawsuit, against Defendants ARX Patient Solutions, LLC, ASSISTRX, Inc., and ARX Patient Solutions Pharmacy, LLC (collectively, "ARX" or "Defendants") based on personal knowledge and the investigation of her counsel, and alleges as follows:

### I.   INTRODUCTION

1.   With this action, Plaintiff seeks to hold Defendants responsible for the harms they caused Plaintiff and approximately **41,166** similarly situated persons (the

"Class" or "Class Members") in a massive and preventable data breach due to Defendants' inadequately protected computer network.[1]

2.    On or around June 30, 2023, ARX filed a notice of data breach with the Maine Attorney General's office after discovering an employee's email account was accessed by an unauthorized third-party (the "Data Breach" or "Breach").[2] Following an investigation, ARX determined that cybercriminals may have gained unauthorized access to patient information contained in files within the compromised email account in March of 2022.[3]

3.    According to the Maine Attorney General's Office, the Breach was discovered by ARX on February 20, 2023.[4]

4.    However, ARX offered no information concerning how long the cybercriminals had access to its systems nor how long it took ARX to secure its networks once the Breach was discovered.

5.    Based on the investigation, ARX determined the following types of personally identifiable information ("PII") and protected health information ("PHI") were compromised in the Breach: first and last names, prescription information,

---

[1] *See* https://apps.web.maine.gov/online/aeviewer/ME/40/673c423a-e743-4ac0-bef4-77b2c87d8321.shtml.

[2] https://www.jdsupra.com/legalnews/arx-patient-solutions-files-notice-of-4479080/.

[3] *See* Exhibit 1 (Notice of Data Breach Letter).

[4] https://apps.web.maine.gov/online/aeviewer/ME/40/673c423a-e743-4ac0-bef4-77b2c87d8321.shtml.

CLASS ACTION COMPLAINT

patient account numbers, health insurance account member numbers, health insurance group numbers, doctor's names, and in some cases, Social Security numbers (collectively "Personal Information" or "Private Information").[5] Now, cybercriminals have everything they need to wreak havoc on the financial and personal lives of Plaintiff and the Class.

6.      ARX provides support services to healthcare organizations and by doing so, receives the highly sensitive PII and PHI of Plaintiff and the Class. Plaintiff and Class members provided Defendants with their Personal Information with the understanding that such information would be kept safe from unauthorized access. Alternatively, Plaintiff and Class members provided their Personal Information to healthcare entities who utilize Defendants' services (thereby giving Plaintiff's and the Class's Personal Information to Defendants) with the understanding that such information would be kept safe from unauthorized access.

7.      By taking possession and control of Plaintiff's and Class members' Personal Information, Defendants assumed a duty to securely store and protect the Personal Information of Plaintiff and the Class.

8.      Defendants breached this duty and betrayed the trust of Plaintiff and Class members by failing to properly safeguard and protect their Personal Information, enabling cyber criminals to access, acquire, appropriate, compromise, disclose, encumber, exfiltrate, release, steal, misuse, and/or view it.

---

[5] *Id.*

9.      Defendants' misconduct – failing to timely implement adequate and reasonable measures to protect Plaintiff's and Class members' Personal Information, failing to timely detect the Data Breach, failing to take adequate steps to prevent and stop the Data Breach, failing to disclose the material facts that it did not have adequate security practices in place to safeguard the Personal Information, and failing to provide timely and adequate notice of the Data Breach – caused substantial harm and injuries to Plaintiff and Class members across the United States.

10.     Due to Defendants' negligence and failures, cyber criminals obtained and now possess everything they need to commit personal and medical identity theft and wreak havoc on the financial and personal lives of **over 40,000 individuals**, for decades to come.

11.     Plaintiff brings this class action lawsuit to hold Defendants responsible for their grossly negligent—indeed, reckless—failure to use statutorily required and/or reasonable industry cybersecurity measures to protect Class members' Personal Information.

12.     Because Defendants presented such an easy target to cyber criminals, Plaintiff and Class members have already been subject to violations of their privacy, fraud, and identity theft, and/or have been exposed to a heightened and imminent risk of certainly impending fraud and identity theft.

13.     Thus, as a result of the Data Breach, Plaintiff and Class members have already suffered damages. For example, now that their Personal Information has likely

been released into the criminal cyber domains (including the dark web), Plaintiff and Class members are at imminent and impending risk of identity theft. This risk will continue for the rest of their lives, as Plaintiff and Class members are now forced to deal with the danger of identity thieves possessing and using their Personal Information.

14.     Additionally, Plaintiff and Class members have already lost time and money responding to and mitigating the impact of the Data Breach, which efforts are continuous and ongoing.

15.     Plaintiff brings this action individually and on behalf of the Class and seeks actual damages and restitution.  Plaintiff also seeks declaratory and injunctive relief, including significant improvements to Defendants' data security systems and protocols, future annual audits, long-term credit monitoring services, and other remedies as the Court sees necessary and proper.

## II.    THE PARTIES

16.     Plaintiff **Phyllis Kaminowitz** is a citizen and resident of Bluffton, South Carolina. Plaintiff received a Notice of Data Breach Letter ("Notice Letter") from ARX notifying her that her Personal Information may have been compromised in the Data Breach.[6]

---

[6] *See* Exhibit 1.

CLASS ACTION COMPLAINT

17.    Defendant **ARX Patient Solutions, LLC** is a Delaware limited liability company registered as a foreign limited liability company in the State of Florida. **ARX Patient Solutions, LLC's** principal place of business is located at 501 West Church Street, Suite 450, Orlando, FL.

18.    Defendant **ARX Patient Solutions Pharmacy, LLC** is a Delaware limited liability company registered as a foreign limited liability company in the State of Florida. **ARX Patient Solutions Pharmacy, LLC's** principal place of business is located at 501 West Church Street, Suite 450, Orlando, FL.

19.    Defendant **ASSISTRX, Inc.** is a Delaware corporation registered as a foreign corporation in the State of Florida. **ASSISTRX, Inc.'s** principal place of business is located at 501 West Church Street, Suite 450, Orlando, FL.

20.    As part of Defendants' business, Defendants collect substantial amounts of Personal Information. Upon information and belief, the information Defendants collect includes information that qualifies as "Medical information" under the federal Health Information Portability and Accountability Act ("HIPAA") and personally identifiable information.

### III.    JURISDICTION AND VENUE

21.    This Court has diversity jurisdiction over this action under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d) because this is a class action involving more than 100 class members, the amount in controversy exceeds

$5,000,000, exclusive of interest and costs, and at least some members of the Class are citizens of states that differ from Defendant.

22.    Based upon information and belief, **Class Members** (victims of the Data Breach) are domiciled across the United States. The Notice Letter attached hereto as **Exhibit 1** provides state specific disclosures for individuals in the States of Colorado, Georgia, Maine, Maryland, Massachusetts, Vermont, North Carolina, New York, Connecticut, Iowa, and Oregon. There would be no need to provide these disclosures if Data Breach victims were not located in these states. Additionally, the Maine Attorney General's website states 526 Maine residents were impacted by the Data Breach.[7] Thus, Plaintiff filed this class action lawsuit on behalf of herself and a nationwide class of similarly situated individuals in the United States District Court for the Middle District of Florida, pursuant to CAFA.

23.    This Court has personal jurisdiction over Defendants because Defendants conduct a substantial amount of business in this District, are registered in this district, and maintain their principal places of business in this District.

24.    Venue is likewise proper as to Defendants in this District under 28 U.S.C. § 1391(a)(1) because Defendants' principal place of business is believed to be in this District and many of Defendants' acts complained of herein occurred within this District.

---

[7]    https://apps.web.maine.gov/online/aeviewer/ME/40/673c423a-e743-4ac0-bef4-77b2c87d8321.shtml.

CLASS ACTION COMPLAINT

## IV.    FACTUAL ALLEGATIONS

### A.    The Data Breach and Defendants' Belated Notice

25.    Defendants provide patient support services and technology-enabled workflows to healthcare entities.[8] As part of the services Defendants provide, they are entrusted with, and obligated to safeguard and protect, the Personal Information of Plaintiff and the Class in accordance with applicable laws.

26.    Third-party cybercriminals conducted a successful external system breach (hacking) whereby they infiltrated Defendants' inadequately protected computer network and email accounts and gained unauthorized access to the confidential Personal Information of thousands of individuals whose data was stored within Defendants' systems and email accounts.[9]

27.    ARX avers the Breach occurred in March 2022, but that it did not discover the breach until February 20, 2023.[10]  ARX did not disclose why it took approximately one year to discover the Breach. Additionally, ARX did not disclose how long cybercriminals were free to roam Defendants' systems, nor how long it took Defendants to secure its systems once the Breach was discovered. Unfortunately, this

---

[8]    *See*    https://www.jdsupra.com/legalnews/arx-patient-solutions-files-notice-of-4479080/.

[9]    *See*    **Exhibit    1**    (Notice    of    Data    Breach    Letter); https://apps.web.maine.gov/online/aeviewer/ME/40/673c423a-e743-4ac0-bef4-77b2c87d8321.shtml

[10] *Id.*

could mean cybercriminals had access to Defendants' systems and email accounts for **weeks or months**.

28.    Following an investigation, it was determined that an employee email account was compromised and accessed by an unauthorized third-party, which contained certain files containing Plaintiff and the Class's Personal Information.[11]

29.    Ultimately, the investigation concluded that **over 40,000** individuals' PII and PHI was compromised in the Data Breach.[12]

30.    The type of Personal Information accessed by the unauthorized actor includes PII and PHI, as identified above.[13]

31.    ARX discovered the Data Breach on or around February 20, 2023, but did not begin notifying victims of the Data Breach until **over four (4) months later**, on or around June 26, 2023.[14] Defendants offered no reasonable explanation for the delay between the initial discovery of the Breach and the belated notification to affected patients, which resulted in Plaintiff and Class members suffering harm they otherwise could have avoided had a timely disclosure been made.

---

[11] *Id.*

[12]  *See*  https://apps.web.maine.gov/online/aeviewer/ME/40/673c423a-e743-4ac0-bef4-77b2c87d8321.shtml

[13] *See also* Exhibit 1.

[14]  https://apps.web.maine.gov/online/aeviewer/ME/40/673c423a-e743-4ac0-bef4-77b2c87d8321.shtml

CLASS ACTION COMPLAINT

32.     Upon information and belief, the Personal Information contained within Defendants' systems and email accounts was not encrypted.

33.     Upon information and belief, the unauthorized third-party cybercriminal(s) gained access to the Personal Information and engaged in (and will continue to engage in) misuse of the Personal Information, including marketing and selling Plaintiff's and Class members' Personal Information on the dark web.

34.     Plaintiff and Class members were required to provide their Personal Information to Defendants with the reasonable expectation and mutual understanding that ARX would comply with its obligations to keep such information confidential and secure from unauthorized access.

35.     Accordingly, Defendants had obligations created by HIPAA, reasonable industry standards, common law, statutory law, and its own assurances and representations to keep Plaintiff and Class members' Personal Information confidential and to protect such Personal Information from unauthorized access.

36.     Nevertheless, Defendants failed to spend sufficient resources on preventing external access, detecting outside infiltration, and training their employees to identify threats and defend against them.

37.     The stolen Personal Information at issue has great value to the hackers, due to the large number of individuals affected and the fact that health insurance information and Social Security numbers were part of the data that was compromised.

**B.** **Plaintiff Kaminowitz's Experience**

38.    Plaintiff Kaminowitz entrusted her Personal Information to a healthcare entity who utilized ARX's services and/or entrusted her Personal Information directly to ARX to utilize services provided by ARX. This was done with the reasonable expectation and mutual understanding that Defendants would comply with their obligations to keep such information confidential and secure from unauthorized access.

39.    Plaintiff received a Notice Letter from ARX dated June 27, 2023, informing her that her Personal Information including her first and last name, prescription information, patient account number, health insurance account member number, health insurance group number, doctor's name, and possibly her Social Security number were identified as having been compromised in the Data Breach.[15]

40.    To the best of her knowledge, Plaintiff has never before been a victim of a data breach. Plaintiff does not readily disclose her PII/PHI.

41.    Because of the Data Breach, Plaintiff's Personal Information is likely in the hands of cyber criminals. As such, Plaintiff and the Class are imminently at risk of crippling future identity theft and fraud.

42.    As a result of the Data Breach, Plaintiff has already expended hours of her time and has suffered loss of productivity from taking time to address and attempt to ameliorate, mitigate, and address the future consequences of the Data Breach,

---

[15] *See* Exhibit 1.

including investigating the Data Breach, investigating how best to ensure that she is protected from identity theft, and reviewing account statements and other information. As part of her effort to mitigate the consequences of the Data Breach, Plaintiff has signed up for credit monitoring services.

43.     Subsequent to and as a direct and proximate result of the Data Breach, Plaintiff has experienced a substantial number of spam emails, text messages, and phone calls.

44.     In addition, knowing that hackers misappropriated her Personal Information, and that she is at an increased risk of fraud as a result, the Data Breach has caused Plaintiff to experience stress, anger, anxiety, fear, and sleep disruption. These harms go far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that is contemplated and addressed by law.

45.     Plaintiff has also suffered injury directly and proximately caused by the Data Breach, including: (a) theft of Plaintiff's valuable Personal Information; (b) the imminent and certain impending injury flowing from anticipated fraud and identity theft posed by Plaintiff's Personal Information being placed in the hands of cyber criminals; (c) damages to and diminution in value of Plaintiff's Personal Information that was entrusted to Defendants for the sole purpose of obtaining medical services with the understanding that Defendants would safeguard this information against disclosure; (d) loss of the benefit of the bargain with Defendants to provide adequate

CLASS ACTION COMPLAINT

and reasonable data security—*i.e.*, the difference in value between what Plaintiff should have received from Defendants and Defendants' defective and deficient performance of that obligation by failing to provide reasonable and adequate data security and failing to protect Plaintiff's Personal Information; and (e) continued risk to Plaintiff's Personal Information, which remains in the possession of Defendants and which is subject to further breaches so long as Defendants fail to undertake appropriate and adequate measures to protect the Personal Information that was entrusted to Defendant.

## C.    Defendants had an Obligation to Protect Personal Information Under the Law and the Applicable Standard of Care

46.    Upon information and belief, Defendants are covered by HIPAA (45 C.F.R. § 160.102). As such, it is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

47.    HIPAA's Privacy Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes a national set of security standards for protecting health information, including health information that is kept or transferred in electronic form.

CLASS ACTION COMPLAINT

48.    HIPAA requires Defendants to "comply with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

49.    "Electronic protected health information" is "individually identifiable health information … that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

50.    HIPAA's Security Rule requires Defendants to do the following:

    a.    Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

    b.    Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

    c.    Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

    d.    Ensure compliance by their workforce.

51.    HIPAA also requires Defendants to "review and modify the security measures implemented … as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e).

52.    Additionally, HIPAA requires Defendants to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic

14

protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

53.     The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, further requires Defendants to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach."

54.     Defendants were also prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

55.     Defendants are further required by various states' laws and regulations to protect Plaintiff's and Class members' Personal Information.

56.     Defendants owed a duty to Plaintiff and the Class to design, maintain, and test its computer and email systems to ensure that the Personal Information in its possession was adequately secured and protected.

57.     Defendants owed a duty to Plaintiff and the Class to create and implement reasonable data security practices and procedures to protect the Personal Information in their possession, including adequately training its employees (and

CLASS ACTION COMPLAINT

others who accessed Personal Information within its computer systems) on how to adequately protect Personal Information.

58.    Defendants owed a duty to Plaintiff and the Class to implement processes that would detect a breach on its data security systems in a timely manner.

59.    Defendants owed a duty to Plaintiff and the Class to act upon data security warnings and alerts in a timely fashion.

60.    Defendants owed a duty to Plaintiff and the Class to adequately train and supervise their employees to identify and avoid any phishing emails that make it past its email filtering service.

61.    Defendants owed a duty to Plaintiff and the Class to disclose if their computer systems and data security practices were inadequate to safeguard individuals' Personal Information from theft because such an inadequacy would be a material fact in the decision to entrust Personal Information with Defendant.

62.    Defendants owed a duty to Plaintiff and the Class to disclose in a timely and accurate manner when data breaches occurred.

63.    Defendants owed a duty of care to Plaintiff and the Class because they were foreseeable and probable victims of any inadequate data security practices.

**D.    Defendants were on Notice of Cyber Attack Threats and of the Inadequacy of their Data Security.**

64.    Defendants were on notice that companies, including companies operating within and aiding the healthcare industry have been targets for cyberattacks.

CLASS ACTION COMPLAINT

65.     Defendants were on notice that the FBI has recently been concerned about data security in the healthcare industry. In August 2014, after a cyberattack on Community Health Systems, Inc., the FBI warned companies within the healthcare industry that hackers were targeting them. The warning stated that "[t]he FBI has observed malicious actors targeting healthcare related systems, perhaps for the purpose of obtaining the Protected Healthcare Information (PHI) and/or Personally Identifiable Information (PII)."[16]

66.     The American Medical Association ("AMA") has also warned companies about the importance of protecting patients' confidential information:

> Cybersecurity is not just a technical issue; it's a patient safety issue. AMA research has revealed that 83% of physicians work in a practice that has experienced some kind of cyberattack. Unfortunately, practices are learning that cyberattacks not only threaten the privacy and security of patients' health and financial information, but also patient access to care.[17]

67.     Defendants were also on notice of the importance of data encryption of Personal Information. Defendants knew they kept Personal Information in their email accounts and yet it appears Defendants did not encrypt these email accounts or the information contained within them.

---

[16] Jim Finkle, *FBI Warns Healthcare Firms that they are Targeted by Hackers*, REUTERS (Aug. 2014), http://www.reuters.com/article/2014/08/20/us-cybersecurity-healthcare-fbi-idUSKBN0GK24U20140820.

[17] Andis Robeznieks, *Cybersecurity: Ransomware attacks shut down clinics, hospitals*, AM. MED. ASS'N (Oct. 4, 2019), https://www.ama-assn.org/practice-management/sustainability/cybersecurity-ransomeware-attacks-shut-down-clinics-hospitals.

CLASS ACTION COMPLAINT

68.    The United States Department of Health and Human Services' Office for Civil Rights urges the use of encryption of data containing sensitive personal information. As long ago as 2014, the Department fined two healthcare companies approximately two million dollars for failing to encrypt laptops containing sensitive personal information. In announcing the fines, Susan McAndrew, the DHHS's Office of Human Rights' deputy director of health information privacy, stated "[o]ur message to these organizations is simple: encryption is your best defense against these incidents."[18]

69.    As a company operating within the healthcare sector, and a covered entity or business associate under HIPAA, Defendants should have known about their data security weaknesses and sought better protection for the Personal Information maintained on its systems and accumulating in its business email accounts.

### E.    Cyber Criminals Will Use Plaintiff's and Class Members' Personal Information to Defraud Them.

70.    Plaintiff and Class members' Personal Information is of great value to hackers and cyber criminals, and the data stolen in the Data Breach will be used in a variety of sordid ways for criminals to exploit Plaintiff and the Class members and to profit off their misfortune.

---

[18]"Stolen Laptops Lead to Important HIPAA Settlements," U.S. Dep't of Health and Human Services (Apr. 22, 2014), available at https://wayback.archive-it.org/3926/20170127085330/https://www.hhs.gov/about/news/2014/04/22/stolen-laptops-lead-to-important-hipaa-settlements.html.

CLASS ACTION COMPLAINT

71.     Each year, identity theft causes tens of billions of dollars of losses to victims in the United States.[19] For example, with the Personal Information stolen in the Data Breach, including Social Security numbers, identity thieves can open financial accounts, apply for credit, file fraudulent tax returns, commit crimes, create false driver's licenses and other forms of identification and sell them to other criminals or undocumented immigrants, steal government benefits, give breach victims' names to police during arrests, and many other harmful forms of identity theft.[20] These criminal activities have and will result in devastating financial and personal losses to Plaintiff and Class members.

72.     Personal Information is such a valuable commodity to identity thieves that once it has been compromised, criminals will use it and trade the information on the cyber black-market for years.[21]

---

[19]"Facts + Statistics: Identity Theft and Cybercrime," Insurance Info. Inst., https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (discussing Javelin Strategy & Research's report "2018 Identity Fraud: Fraud Enters a New Era of Complexity").

[20]*See, e.g.*, Christine DiGangi, *5 Ways an Identity Thief Can Use Your Social Security Number*, Nov. 2, 2017, https://blog.credit.com/2017/11/5-things-an-identity-thief-can-do-with-your-social-security-number-108597/.

[21] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO, July 5, 2007, https://www.gao.gov/assets/270/262904.htmlu.

CLASS ACTION COMPLAINT

73.    For example, it is believed that certain Personal Information compromised in the 2017 Experian data breach was being used, three years later, by identity thieves to apply for COVID-19-related benefits in the state of Oklahoma.[22]

74.    This was a financially motivated Data Breach, as apparent from the discovery of the cyber criminals seeking to profit off the sale of Plaintiff's and the Class members' Personal Information on the dark web. The Personal Information exposed in this Data Breach is valuable to identity thieves for use in the kinds of criminal activity described herein.

75.    These risks are both certainly impending and substantial. As the FTC has reported, if hackers get access to personally identifiable information, they will use it.[23]

76.    Hackers may not use the accessed information right away. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [I]n some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that

---

[22] *See* https://www.engadget.com/stolen-data-used-for-unemployment-fraud-ring-174618050.html; *see also* https://www.wired.com/story/nigerian-scammers-unemployment-system-scattered-canary/.

[23] Ari Lazarus, *How fast will identity thieves use stolen info?*, FED. TRADE COMM'N (May 24, 2017), https://www.consumer.ftc.gov/blog/2017/05/how-fast-will-identity-thieves-use-stolen-info.

CLASS ACTION COMPLAINT

attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[24]

77.     Medical-related identity theft is one of the most common, most expensive, and most difficult to prevent forms of identity theft. According to Kaiser Health News, "medical-related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013…," which is more than identity thefts involving banking and finance, the government and the military, or education.[25]

78.     As indicated by James Trainor, second in command at the FBI's cyber security division: "Medical records are a gold mine for criminals—they can access a patient's name, DOB, Social Security and insurance numbers, and even financial information all in one place."[26] A complete identity theft kit that includes health insurance credentials may be worth up to $1,000 on the black market.[27]

---

[24] *See Cases Currently Under Investigation,* U.S. DEP'T OF HEALTH & HUMAN SERVS.: BREACH PORTAL, https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf.

[25] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, https://khn.org/news/rise-of-indentity-theft/.

[26] IDExperts, *You Got It, They Want It: Criminals Targeting Your Private Healthcare Data, New Ponemon Study Shows,* https://www.idexpertscorp.com/knowedge-center/single/you-got-it-they-want-it-criminals-are-targeting-your-private-healthcare-dat.

[27] *Managing cyber risks in an interconnected world,* PRICEWATERHOUSECOOPERS: Key findings from The Global State of Information Security Survey 2015, https://www.pwc.com/gx/en/consulting-services/information-security-survey/assets/the-global-state-of-information-security-survey-2015.pdf.

CLASS ACTION COMPLAINT

79.     If cyber criminals manage to steal financial information, health insurance information, and other personally sensitive data—as they did here—there is no limit to the amount of fraud to which Defendants has exposed the Plaintiff and Class members.

80.     As described above, identity theft victims must spend countless hours and large amounts of money repairing the impact to their credit.[28]

81.     With this Data Breach, identity thieves have already started to prey on the victims, and one can reasonably anticipate this will continue.

82.     Victims of the Data Breach, like Plaintiff and other Class members, must spend many hours and large amounts of money protecting themselves from the current and future negative impacts to their credit because of the Data Breach.[29]

83.     In fact, as a direct and proximate result of the Data Breach, Plaintiff and the Class have suffered, and have been placed at an imminent, immediate, and continuing increased risk of suffering, harm from fraud and identity theft. Plaintiff and the Class must now take the time and effort and spend the money to mitigate the actual and potential impact of the Data Breach on their everyday lives, including purchasing identity theft and credit monitoring services, placing "freezes" and "alerts"

---

[28] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

[29] "Guide for Assisting Identity Theft Victims," Federal Trade Commission, 4 (Sept. 2013), http://www.consumer.ftc.gov/articles/pdf-0119-guide-assisting-id-theft-victims.pdf.

with credit reporting agencies, contacting their financial institutions, healthcare providers, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts, credit reports, and health insurance account information for unauthorized activity for years to come.

84.    Plaintiff and the Class have suffered, and continue to suffer, actual harms for which they are entitled to compensation, including:

      a.    Trespass, damage to, and theft of their personal property including Personal Information;

      b.    Improper disclosure of their Personal Information;

      c.    The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Personal Information being placed in the hands of criminals and having been already misused;

      d.    The imminent and certainly impending risk of having their Personal Information used against them by spam callers to defraud them;

      e.    Damages flowing from Defendants' untimely and inadequate notification of the data breach;

      f.    Loss of privacy suffered as a result of the Data Breach;

CLASS ACTION COMPLAINT

g.  Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably expended to remedy or mitigate the effects of the data breach;

h.  Ascertainable losses in the form of deprivation of the value of patients' personal information for which there is a well-established and quantifiable national and international market;

i.  The loss of use of and access to their credit, accounts, and/or funds;

j.  Damage to their credit due to fraudulent use of their Personal Information; and

k.  Increased cost of borrowing, insurance, deposits and other items which are adversely affected by a reduced credit score.

85.  Moreover, Plaintiff and Class members have an interest in ensuring that their information, which remains in the possession of Defendants, is protected from further breaches by the implementation of industry standard and statutorily compliant security measures and safeguards. Defendants have shown themselves to be incapable of protecting Plaintiff's and Class members' Personal Information.

86.  Plaintiff and Class members are desperately trying to mitigate the damage that Defendants have caused them but, given the Personal Information Defendants made accessible to hackers, they are certain to incur additional damages. Because identity thieves have their Personal Information, Plaintiff and all Class members will

CLASS ACTION COMPLAINT

need to have identity theft monitoring protection for the rest of their lives. Some may even need to go through the long and arduous process of getting a new Social Security number, with all the loss of credit and employment difficulties that come with this change.[30]

87.    None of this should have happened. The Data Breach was preventable.

**F.    Defendants Could Have Prevented the Data Breach but Failed to Adequately Protect Plaintiff's and Class Members' Personal Information**

88.    Data breaches are preventable.[31] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[32] she added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised . . . ."[33]

89.    "Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules, and procedures …

---

[30]*Will a New Social Security Number Affect Your Credit?*, LEXINGTON LAW (Nov. 16, 2015), https://www.lexingtonlaw.com/blog/credit-101/will-a-new-social-security-number-affect-your-credit.html.

[31]Lucy L. Thompson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012).

[32]*Id.* at 17.

[33]*Id.* at 28.

CLASS ACTION COMPLAINT

Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*."[34]

90.    The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

91.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[35]

---

[34]*Id.*

[35] *Protecting Personal Information: A Guide for Business*, Federal Trade Commission (2016). Available at https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

92.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

93.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

94.    These FTC enforcement actions include actions against healthcare providers and partners like Defendant. *See, e.g., In the Matter of Labmd, Inc., A Corp*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.").

95.    Defendants failed to properly implement basic data security practices, including those set forth by the FTC.

27

96.    Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to customers' Personal Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

97.    Defendants also failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

98.    Defendants required Plaintiff and Class members to surrender their Personal Information – including but not limited to their names, addresses, Social Security numbers, medical information, and health insurance information – and were entrusted with properly holding, safeguarding, and protecting against unlawful disclosure of such Personal Information.

99.    Many failures laid the groundwork for the success ("success" from a cybercriminal's viewpoint) of the Data Breach, starting with Defendants' failure to incur the costs necessary to implement adequate and reasonable cyber security procedures and protocols necessary to protect Plaintiff's and Class members' Personal Information.

100.    Defendants were at all times fully aware of their obligation to protect the Personal Information of Plaintiff and Class members. Defendants were also aware of the significant repercussions that would result from their failure to do so.

101.    Defendants maintained the Personal Information in a reckless manner. In particular, the Personal Information was maintained and/or exchanged, unencrypted, in Defendants' business email accounts that were maintained in a condition vulnerable to cyberattacks.

102.    Defendants knew, or reasonably should have known, of the importance of safeguarding Personal Information and of the foreseeable consequences that would occur if Plaintiff's and Class members' Personal Information was stolen, including the significant costs that would be placed on Plaintiff and Class members as a result of a breach.

103.    The mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class members' Personal Information was a known risk to Defendants, and thus Defendants were on notice that failing to take necessary steps to secure Plaintiff's and Class members' Personal Information from those risks left that information in a dangerous condition.

104.    Defendants disregarded the rights of Plaintiff and Class members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its business email accounts were protected against unauthorized intrusions; (ii) failing to disclose that it did not have adequately robust

29

security protocols and training practices in place to adequately safeguard Plaintiff's and Class members' Personal Information; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (v) failing to provide Plaintiff and Class members prompt and accurate notice of the Data Breach.

## V.    CLASS ACTION ALLEGATIONS

105.    Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

106.    Plaintiff brings all claims as class claims under Federal Rule of Civil Procedure 23.  Plaintiff asserts all claims on behalf of the Nationwide Class, defined as follows:

> **Nationwide Class**
>
> All persons residing in the United States who received a Notice of Data Breach letter from Defendants.

107.    Plaintiff reserves the right to amend the above definitions or to propose alternative or add subclasses in subsequent pleadings and motions for class certification.

108.    The proposed Nationwide Class and Subclass (collectively referred to herein as the "Class" unless otherwise specified) meet the requirements of Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

CLASS ACTION COMPLAINT

109.   **Numerosity:** The proposed Class is believed to be so numerous that the joinder of all members is impracticable. The proposed Subclass is also believed to be so numerous that joinder of all members would be impractical.

110.   **Typicality:** Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class were injured through Defendants' uniform misconduct. The same event and conduct that gave rise to Plaintiff's claims are identical to those that give rise to the claims of every other Class member because Plaintiff and each member of the Class had their sensitive Personal Information compromised in the same way by the same conduct of Defendant.

111.   **Adequacy:** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class and proposed Subclass that she seeks to represent; Plaintiff has retained counsel competent and highly experienced in data breach class action litigation; and Plaintiff and Plaintiff's counsel intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

112.   **Superiority:** A class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiff and the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of complex and expensive litigation. It would be very difficult, if not impossible, for members of the Class individually to effectively redress Defendants' wrongdoing. Even if Class members could afford such individual

31

litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

113.    **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

a.    Whether Defendants engaged in the wrongful conduct alleged herein;

b.    Whether Defendants failed to adequately safeguard Plaintiff's and the Class's Personal Information;

c.    Whether Defendants' email and computer systems and data security practices used to protect Plaintiff's and Class members' Personal Information violated the FTC Act, HIPAA, and/or state laws and/or Defendants' other duties discussed herein;

d.    Whether Defendants owed a duty to Plaintiff and the Class to adequately protect their Personal Information, and whether it breached this duty;

CLASS ACTION COMPLAINT

e.    Whether Defendants knew or should have known that their computer and network security systems and business email accounts were vulnerable to a data breach;

f.    Whether Defendants' conduct, including their failure to act, resulted in or was the proximate cause of the Data Breach;

g.    Whether Defendants breached contractual duties owed to Plaintiff and the Class to use reasonable care in protecting their Personal Information;

h.    Whether Defendants failed to adequately respond to the Data Breach, including failing to investigate it diligently and notify affected individuals in the most expedient time possible and without unreasonable delay, and whether this caused damages to Plaintiff and the Class;

i.    Whether Defendants continue to breach duties to Plaintiff and the Class;

j.    Whether Plaintiff and the Class suffered injury as a proximate result of Defendants' negligent actions or failures to act;

k.    Whether Plaintiff and the Class are entitled to recover damages, equitable relief, and other relief;

l.    Whether injunctive relief is appropriate and, if so, what injunctive relief is necessary to redress the imminent and currently ongoing

33

harm faced by Plaintiff and members of the Class and the general public;

m.   Whether Defendants' actions alleged herein constitute gross negligence; and

n.   Whether Plaintiff and Class members are entitled to punitive damages.

### VI.    CAUSES OF ACTION

### COUNT ONE
### NEGLIGENCE
### (On Behalf of the Nationwide Class)

114.   Plaintiff incorporates by reference the allegations in paragraphs 1–15 and 25–104 as though fully set forth herein.

115.   Defendants solicited, gathered, and stored the Personal Information of Plaintiff and the Class as part of the operation of its business.

116.   Upon accepting and storing the Personal Information of Plaintiff and Class members, Defendants undertook and owed a duty to Plaintiff and Class members to exercise reasonable care to secure and safeguard that information and to use secure methods to do so.

117.   Defendants had full knowledge of the sensitivity of the Personal Information, the types of harm that Plaintiff and Class members could and would suffer if the Personal Information was wrongfully disclosed, and the importance of adequate security.

118.    Plaintiff and Class members were the foreseeable victims of any inadequate safety and security practices on the part of Defendant. Plaintiff and the Class members had no ability to protect their Personal Information that was in Defendants' possession. As such, a special relationship existed between Defendants and Plaintiff and the Class.

119.    Defendants were well aware of the fact that cyber criminals routinely target healthcare entities and entities supporting healthcare entities through cyberattacks in an attempt to steal sensitive personal and medical information.

120.    Defendants owed Plaintiff and the Class members a common law duty to use reasonable care to avoid causing foreseeable risk of harm to Plaintiff and the Class when obtaining, storing, using, and managing personal information, including taking action to reasonably safeguard such data and providing notification to Plaintiff and the Class members of any breach in a timely manner so that appropriate action could be taken to minimize losses.

121.    Defendants' duty extended to protecting Plaintiff and the Class from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures also have recognized the existence of a specific duty to reasonably safeguard personal information.

CLASS ACTION COMPLAINT

122.    Defendants had duties to protect and safeguard the Personal Information of Plaintiff and the Class from being vulnerable to cyberattacks by taking common-sense precautions when dealing with sensitive Personal Information. Additional duties that Defendants owed Plaintiff and the Class include:

a.    To exercise reasonable care in designing, implementing, maintaining, monitoring, and testing Defendants' networks, systems, email accounts, protocols, policies, procedures and practices to ensure that Plaintiff's and Class members' Personal Information was adequately secured from impermissible release, disclosure, and publication;

b.    To protect Plaintiff's and Class members' Personal Information in their possession by using reasonable and adequate security procedures and systems;

c.    To implement processes to quickly detect a data breach, security incident, or intrusion involving its business email system, networks and servers; and

d.    To promptly notify Plaintiff and Class members of any data breach, security incident, or intrusion that affected or may have affected their Personal Information.

36

CLASS ACTION COMPLAINT

123.    Only Defendants were in a position to ensure that their systems and protocols were sufficient to protect the Personal Information that Plaintiff and the Class had entrusted to them.

124.    Defendants breached their duty of care by failing to adequately protect Plaintiff's and Class members' Personal Information. Defendants breached their duties by, among other things:

a.    Failing to exercise reasonable care in obtaining, retaining securing, safeguarding, deleting, and protecting the Personal Information in their possession;

b.    Failing to protect the Personal Information in their possession by using reasonable and adequate security procedures and systems;

c.    Failing to adequately and properly audit, test, and train their employees to avoid phishing emails;

d.    Failing to use adequate email security systems, including healthcare industry standard SPAM filters, DMARC enforcement, and/or Sender Policy Framework enforcement to protect against phishing emails;

e.    Failing to adequately and properly audit, test, and train their employees regarding how to properly and securely transmit and store Personal Information;

CLASS ACTION COMPLAINT

     f.     Failing to adequately train their employees to not store Personal Information in their email inboxes longer than absolutely necessary for the specific purpose that it was sent or received;

     g.     Failing to consistently enforce security policies aimed at protecting Plaintiff's and the Class's Personal Information;

     h.     Failing to implement processes to quickly detect data breaches, security incidents, or intrusions;

     i.     Failing to promptly notify Plaintiff and Class members of the Data Breach that affected their Personal Information.

125.   Defendants' willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

126.   As a proximate and foreseeable result of Defendants' grossly negligent conduct, Plaintiff and the Class have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

127.   Through Defendants' acts and omissions described herein, including but not limited to Defendants' failure to protect the Personal Information of Plaintiff and Class members from being stolen and misused, Defendants unlawfully breached their duty to use reasonable care to adequately protect and secure the Personal Information of Plaintiff and Class members while it was within Defendants' possession and control.

128.   Further, through their failure to provide timely and clear notification of the Data Breach to Plaintiff and Class members, Defendants prevented Plaintiff and

Class members from taking meaningful, proactive steps toward securing their Personal Information and mitigating damages.

129.    As a result of the Data Breach, Plaintiff and Class members have spent time, effort, and money to mitigate the actual and potential impact of the Data Breach on their lives, including but not limited to, responding to fraudulent activity, closely monitoring bank account activity, and examining credit reports and statements sent from providers and their insurance companies. This is in addition to the identity theft and fraud Plaintiff alleged.

130.    Defendants' wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

131.    The damages Plaintiff and the Class have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendants' grossly negligent conduct.

132.    In addition to its duties under common law, Defendants had additional duties imposed by statute and regulations, including the duties under HIPAA and the FTC Act. The harms which occurred as a result of Defendants' failure to observe these duties, including the loss of privacy, lost time and expense, and significant risk of identity theft are the types of harm that these statutes and regulations intended to prevent.

133.    Defendants violated these statutes when they engaged in the actions and omissions alleged herein, and Plaintiff's and Class members' injuries were a direct and

CLASS ACTION COMPLAINT

proximate result of Defendants' violations of these statutes. Plaintiff therefore is entitled to the evidentiary presumptions for negligence *per se*.

134.    Pursuant to the FTC Act, 15 U.S.C. § 45(a), Defendants owed a duty to Plaintiff and the Class to provide fair and adequate computer systems and data security to safeguard the Personal Information of Plaintiff and the Class.

135.    The FTC Act prohibits "unfair practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Personal Information. The FTC publications and orders described above also formed part of the basis of Defendants' duty in this regard.

136.    Defendants gathered and stored the Personal Information of Plaintiff and the Class as part of their business, which affects commerce.

137.    Defendants violated the FTC Act by failing to use reasonable measures to protect the Personal Information of Plaintiff and the Class and by not complying with applicable industry standards, as described herein.

138.    Defendants breached their duties to Plaintiff and the Class under the FTC Act, and HIPAA by failing to provide fair, reasonable, or adequate computer systems and/or data security practices to safeguard Plaintiff's and Class members' Personal Information, and by failing to provide prompt and specific notice without reasonable delay.

CLASS ACTION COMPLAINT

139.    Plaintiff and the Class are within the class of persons that HIPAA and the FTC Act were intended to protect.

140.    The harm that occurred as a result of the Data Breach is the type of harm the FTC Act and HIPAA were intended to guard against.

141.    Defendants breached their duties to Plaintiff and the Class under these laws by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and the Class's Personal Information.

142.    Additionally, Defendants had a duty to promptly notify victims of the Data Breach. Defendants did not begin notifying Plaintiff or Class members of the Data Breach until June 2023.  Defendant, however, knew of the Data Breach by February 2023.

143.    Defendants breached their duties to Plaintiff and the Class by unreasonably delaying and failing to provide notice of the Data Breach expeditiously and/or as soon as practicable to Plaintiff and the Class.

144.    As a direct and proximate result of Defendants' negligence, Plaintiff and the Class have suffered, and continue to suffer, damages arising from the Data Breach, as alleged above.

145.    The injury and harm that Plaintiff and Class members suffered (as alleged above) was the direct and proximate result of Defendants' negligence.

146.    Plaintiff and the Class have suffered injury and are entitled to actual and punitive damages in amounts to be proven at trial.

CLASS ACTION COMPLAINT

**COUNT TWO**
**UNJUST ENRICHMENT**
**(On Behalf of the Nationwide Class, or in the alternative, the Florida Subclass)**

147.    Plaintiff incorporates by reference the allegations in paragraphs 1–15 and 25–104 as though fully set forth herein.

148.    Plaintiff and the Class bring this claim in the alternative to all other claims and remedies at law.

149.    Through the use of Defendants' services, Defendants received monetary benefits from Plaintiff and the Class.

150.    Defendants collected, maintained, and stored the Personal Information of Plaintiff and Class members and, as such, Defendants had direct knowledge of the monetary benefits conferred upon it.

151.    Defendants, by way of their affirmative actions and omissions, including their knowing violations of their express or implied contracts with Plaintiff and the Class members, knowingly and deliberately enriched itself by saving the costs it reasonably and contractually should have expended on HIPAA compliance and reasonable data privacy and security measures to secure Plaintiff's and Class members' Personal Information.

152.    Instead of providing a reasonable level of security, training, and protocols that would have prevented the Data Breach, as described above and as is common industry practice among companies entrusted with similar Personal Information,

CLASS ACTION COMPLAINT

Defendant, upon information and belief, instead consciously and opportunistically calculated to increase its own profits at the expense of Plaintiff and Class members.

153.    As a direct and proximate result of Defendants' decision to profit rather than provide adequate data security, Plaintiff and Class members suffered and continue to suffer actual damages, including (i) the amount of the savings and costs Defendants reasonably and contractually should have expended on data security measures to secure Plaintiff's Personal Information, (ii) time and expenses mitigating harms, (iii) diminished value of Personal Information, (iv) loss of privacy, (v) harms as a result of identity theft; and (vi) an increased risk of future identity theft.

154.    Defendants, upon information and belief, have therefore engaged in opportunistic, unethical, and immoral conduct by profiting from conduct that they knew would create a significant and highly likely risk of substantial and certainly impending harm to Plaintiff and the Class in direct violation of Plaintiff's and Class members' legally protected interests. As such, it would be inequitable, unconscionable, and unlawful to permit Defendants to retain the benefits it derived as a consequence of its wrongful conduct.

155.    Accordingly, Plaintiff and the Class are entitled to relief in the form of restitution and disgorgement of all ill-gotten gains, which should be put into a common fund to be distributed to Plaintiff and the Class.

**COUNT THREE**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of the Nationwide Class)**

43

156.    Plaintiff incorporates by reference the allegations in paragraphs 1–15 and 25–104 as though fully set forth herein.

157.    When Plaintiff and the Class members provided their Personal Information to Defendants, they entered into implied contracts in which Defendants agreed to comply with their statutory and common law duties to protect Plaintiff's and Class members' Personal Information and to timely notify them in the event of a data breach.

158.    Defendants required Plaintiff and Class members to provide their Personal Information in order for them to receive medical related services.

159.    Based on the implicit understanding, Plaintiff and the Class accepted Defendants' offers and provided Defendants with their Personal Information.

160.    Plaintiff and Class members would not have provided their Personal Information to Defendants had they known that Defendants would not safeguard their Personal Information, as promised, or provide timely notice of a data breach.

161.    Plaintiff and Class members fully performed their obligations under their implied contracts with Defendants.

162.    Defendants breached the implied contracts by failing to safeguard Plaintiff's and Class members' Personal Information and by failing to provide them with timely and accurate notice of the Data Breach.

CLASS ACTION COMPLAINT

163.    The losses and damages Plaintiff and Class members sustained (as described above) were the direct and proximate result of Defendants' breach of their implied contracts with Plaintiff and Class members.

## COUNT FOUR
## VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUTPA"), FLA. STAT. § 501.201 *ET SEQ.*
## (On Behalf of the Florida Subclass)

164.    Plaintiff incorporates by reference the allegations in paragraphs 1–15 and 25–104 as though fully set forth herein.

165.    FDUTPA prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204.

166.    Defendants engaged in the conduct alleged in this Amended Complaint through transactions in and involving trade and commerce.

167.    While engaged in trade or commerce, Defendants violated FDUTPA, including, among other things, by:

a.    Failing to implement and maintain appropriate and reasonable security procedures and practices to safeguard and protect the Private Information of Plaintiff and the Class from unauthorized access and disclosure;

b.    Failing to disclose and/or concealing the material fact that their computer systems, email accounts, and data security practices were inadequate to safeguard and protect the Private Information

45

of Plaintiff and the Class from being compromised, stolen, lost, or misused; and

c. Failing to disclose the Data Breach in a timely and accurate manner in violation of Fla. Stat. § 501.171.

168.    Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard Class Members' Private Information entrusted to it, and that risk of a data breach or theft was highly likely.

169.    Defendants should have disclosed this information because they were in a superior position to know the true facts related to their defective data security.

170.    Defendants' failures constitute false and misleading representations, which have the capacity, tendency, and effect of deceiving or misleading consumers (including Plaintiff and Class Members) regarding the security of Defendants' network and aggregation of Private Information.

171.    The representations upon which impacted individuals (including Plaintiff and Class Members) relied were material representations (e.g., as to Defendant' adequate protection of Private Information), and consumers (including Plaintiff and Class Members) relied on those representations to their detriment.

172.    Defendants' actions constitute unconscionable, deceptive, or unfair acts or practices because, as alleged herein, Defendants engaged in immoral, unethical, oppressive, and unscrupulous activities that are and were substantially injurious to Defendant' client patients.

CLASS ACTION COMPLAINT

173.    In committing the acts alleged above, Defendants engaged in unconscionable, deceptive, and unfair acts and practices acts by omitting, failing to disclose, or inadequately disclosing to Plaintiffs and the Class that they did not follow industry best practices for the collection, use, and storage of Private Information.

174.    As a direct and proximate result of Defendants' conduct, Plaintiff and other Members of the Class have been harmed and have suffered damages including, but not limited to: damages arising from attempted identity theft and fraud; out-of-pocket expenses associated with procuring identity protection and restoration services; increased risk of future identity theft and fraud, and the costs associated therewith; and time spent monitoring, addressing and correcting the current and future consequences of the Healthcare Data Breach.

175.    As a direct and proximate result of Defendants' unconscionable, unfair, and deceptive acts and omissions, Plaintiff's and Class Members' Private Information was disclosed to third parties without authorization, causing and will continue to cause Plaintiff and Class Members damages. Accordingly, Plaintiff and Class Members are entitled to recover actual damages, an order providing declaratory and injunctive relief, and reasonable attorneys' fees and costs, to the extent permitted by law.

## COUNT FIVE
## DECLARATORY RELIEF
### (On Behalf of the Nationwide Class)

176.    Plaintiff incorporates by reference the allegations in paragraphs 1–15 and 25–104 as though fully set forth herein.

CLASS ACTION COMPLAINT

177.   This count is brought under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

178.   As previously alleged, Plaintiff and members of the Class entered into implied contracts with Defendants, which contracts required Defendants to provide adequate security for the PII/PHI collected from Plaintiff and the Class.

179.   Defendants owed and still owe a duty of care to Plaintiff and Class members that require them to adequately secure Plaintiff and Class members' PII/PHI.

180.   Upon reason and belief, Defendants still possess the PII/PHI of Plaintiff and the Class members.

181.   Defendants have not satisfied their contractual obligations and legal duties to Plaintiff and the Class members.

182.   Since the Data Breach, Defendants have not yet announced any changes to its data security infrastructure, processes, or procedures to fix the vulnerabilities in its computer systems and/or security practices which permitted the Data Breach to occur and go undetected and, thereby, prevent further attacks.

183.   Defendants have not satisfied their contractual obligations and legal duties to Plaintiff and the Class. In fact, now that Defendants' insufficient data security is known to hackers, the PII/PHI in Defendants' possession is even more vulnerable to cyberattack.

184.    Actual harm has arisen in the wake of the Data Breach regarding Defendants' contractual obligations and duties of care to provide security measures to Plaintiff and the members of the Class. Further, Plaintiff and the members of the Class are at risk of additional or further harm due to the exposure of their PII/PHI and Defendants' failure to address the security failings that led to such exposure.

185.    There is no reason to believe that Defendants' security measures are any more adequate now than they were before the Data Breach to meet Defendants' contractual obligations and legal duties.

186.    Plaintiff and the Class, therefore, seek a declaration (1) that Defendants' existing security measures do not comply with its contractual obligations and duties of care to provide adequate security, and (2) that to comply with its contractual obligations and duties of care, Defendants must implement and maintain reasonable security measures, including, but not limited to:

    a.    Ordering    that    Defendants    engage    third-party    security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

    b.    Ordering that Defendants engage third-party security auditors and internal personnel to run automated security monitoring;

CLASS ACTION COMPLAINT

c. Ordering that Defendants audit, test, and train its security personnel regarding any new or modified procedures;

d. Ordering that Defendants segment employee data by, among other things, creating firewalls and access controls so that if one area of Defendants' systems is compromised, hackers cannot gain access to other portions of Defendants' systems;

e. Ordering that Defendants purge, delete, and destroy, in a reasonably secure manner, customer data not necessary for their provisions of services;

f. Ordering that Defendants conduct regular database scanning and security checks; and

g. Ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

## VII. <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff and the Class pray for judgment against Defendants as follows:

a. An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the

CLASS ACTION COMPLAINT

undersigned as Class counsel, and finding that Plaintiff is a proper representative of the Class requested herein;

b.    A judgment in favor of Plaintiff and the Class awarding them appropriate monetary relief, including actual damages, restitution, attorney fees, expenses, costs, and such other and further relief as is just and proper.

c.    An order providing injunctive and other equitable relief as necessary to protect the interests of the Class and the general public as requested herein, including, but not limited to:

    i.    Ordering that Defendants engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

    ii.    Ordering that Defendants engage third-party security auditors and internal personnel to run automated security monitoring;

    iii.    Ordering that Defendants audit, test, and train their security personnel regarding any new or modified procedures;

51

iv.  Ordering that Defendants segment customer data by, among other things, creating firewalls and access controls so that if one area of Defendants' systems is compromised, hackers cannot gain access to other portions of Defendants' systems;

v.  Ordering that Defendants cease transmitting Personal Information via unencrypted email;

vi.  Ordering that Defendants cease storing Personal Information in email accounts;

vii.  Ordering that Defendants purge, delete, and destroy in a reasonably secure manner customer data not necessary for its provisions of services;

viii.  Ordering that Defendants conduct regular database scanning and securing checks;

ix.  Ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

x.  Ordering Defendants to meaningfully educate current, former, and prospective employees and subcontractors about the threats faced as a result of the loss of financial and

52

personal information to third parties, as well as the steps they must take to protect against such occurrences;

d.   An order requiring Defendants to pay the costs involved in notifying the Class members about the judgment and administering the claims process;

e.   A judgment in favor of Plaintiff and the Class awarding them pre-judgment and post-judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law; and

f.   An award of such other and further relief as this Court may deem just and proper.

## VIII.   <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury on all issues so triable.

DATED:  July 28, 2023                 */s/ Joshua R. Jacobson*
                                      **NORMAND PLLC**
                                      Joshua R. Jacobson, Esq.
                                      jjacobson@normandpllc.com
                                      3165 McCrory Place, Suite 175
                                      Orlando, FL 32803
                                      Telephone: 407-603-6031

                                      William B. Federman*
                                      Lead Counsel
                                      **FEDERMAN & SHERWOOD**
                                      10205 N. Pennsylvania Ave.
                                      Oklahoma City, OK 73120
                                      T: (405) 235-1560
                                      F: (405) 239-2112
                                      E: wbf@federmanlaw.com
                                      *Pro Hac Vice application pending*
                                      ***Counsel for Plaintiff and the Proposed Class***

CLASS ACTION COMPLAINT