# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**PHYLLIS KAMINOWITZ**, individually and on behalf of all others similarly situated,

            Plaintiff,

v.

**ARX PATIENT SOLUTIONS, LLC, ASSISTRX, INC.,** and **ARX PATIENT SOLUTIONS PHARMACY, LLC**

            Defendants.

Case No.: 6:23-CV-01446-WWB-EJK

HON. WENDY W. BERGER

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

PLEASE TAKE NOTICE that Plaintiff Phyllis Kaminowitz ("Plaintiff"), individually and on behalf of the putative class, moves pursuant to Federal Rule of Civil Procedure ("Rule") 23(e) for an Order: (i) granting preliminary approval of the proposed Settlement; (ii) preliminarily certifying a class for purposes of Settlement; (iii) appointing Plaintiff as the Class Representative; (iv) appointing William B. Federman of Federman & Sherwood as Class Counsel; (v) approving the Parties' proposed form and method of giving notice of the pendency of this action and the Settlement to the Settlement Class; (vi) directing notice be given to the Settlement Class; (vii) scheduling a hearing at which time the Court will consider the request for final approval of the Settlement and request for attorneys' fees and expenses; and (viii) granting such other relief and further relief as the Court deems proper.

1

# I.    INTRODUCTION

In March 2022, Defendants ARX Patient Solutions, LLC, AssistRx, Inc., and ARX Patient Solutions Pharmacy, LLC ("Defendants" or "ARX") discovered an employee email account was "compromised and accessed by an unauthorized third party" (the "Data Incident"). *See* First Amended Class Action Complaint ("Compl."), ¶ 4, ECF No. 27. ARX initiated an investigation and determined that files containing the personally identifiable information ("PII") and protected health information "PHI") of Plaintiff and the Class were contained within the compromised email account. *Id.* at Ex. 1. ARX issued formal notice of the Data Incident on or around June 27, 2023. *Id.* Thereafter, Plaintiff commenced this class action lawsuit, alleging Defendants failed to sufficiently protect her PHI and PII from unauthorized access. *Id.* ¶ 1.   Defendants moved to dismiss Plaintiff's Complaint pursuant to Rules 12(b)(1) and 12(b)(6) on the basis that Plaintiff failed to allege any injury-in-fact and therefore lacked standing. ECF No. 29. This motion was not adjudicated and on January 22, 2024, upon the parties' motion, the Court stayed all deadlines in the case. ECF No. 37.

After months of litigation and hard-fought settlement negotiations, the Parties have reached a settlement that provides substantial benefits to the Settlement Class.[1] Specifically, the Settlement Agreement provides monetary relief that will: (i) reimburse

---

[1] Unless otherwise stated, all capitalized terms shall have the definitions set forth in the Settlement Agreement attached as Exhibit 1 to the Declaration of William B. Federman in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement. Citations to the Settlement Agreement will be abbreviated as "SA, ¶ ___."

Out-of-Pocket Losses up to $600.00 for expenses incurred as a result of the Data Incident (SA, ¶ 14); (ii) reimburse each Settlement Class Member for up to three (3) hours of Lost Time spent responding to the Data Incident at a rate of $30.00 an hour (*id*. ¶ 14(b)); and (iii) provide up to $6,500.00 in Extraordinary Loss Reimbursement to Settlement Class Members who experienced loss as a result of identity theft or fraud (*id*. ¶ 15). In addition, all Settlement Class Members are eligible to receive three (3) years of one-bureau credit monitoring and identity theft protection services. *Id.* ¶ 16. The above payments will be paid on a claims-made basis, not to exceed the Aggregate Cap ($850,000.00). *Id.* ¶ 13(c). This is an outstanding result for Plaintiff and the Settlement Class.

As further discussed below, the Settlement falls within the range of judicial approval and includes a comprehensive notice plan. As such, preliminary approval of the proposed class action settlement is warranted.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

ARX provides patient support services and technology-enabled workflows to healthcare entities. Compl. ¶ 25. As part of the services ARX provides, it is entrusted with the PII and PHI of Plaintiff and the Class. *Id.* ¶ 26.

According to Defendants, in March 2022, an employee M365 account was compromised and accessed by an unauthorized third party. *Id.* ¶ 31. Within the compromised and accessed employee email account laid the PHI and PII of Plaintiff and the Class, potentially including their: first and last names, prescription information, patient account numbers, health insurance account numbers, health

insurance group numbers, doctors' names, and Social Security numbers.[2] *Id.* ¶ 4. In or around late June 2023, ARX issued formal notice of the Data Incident to Plaintiff and the Class. *Id.* ¶¶ 6–7.

On July 28, 2023, Plaintiff filed a class action lawsuit against ARX, alleging ARX failed to adequately protect Plaintiff's and the Class's PII from unauthorized access. *See* Class Action Complaint, ECF No. 1. Plaintiff filed her First Amended Class Action Complaint on October 17, 2023, asserting the following claims for relief: (i) negligence; (ii) unjust enrichment; (iii) breach of implied contract; (iv) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"); and (v) declaratory judgment. *See* Compl. ¶¶ 127–99. In response, ARX filed a Motion to Dismiss (ECF No. 29), which Plaintiff opposed (ECF No. 32).

Prior to engaging in mediation and reaching a settlement, the parties conducted meaningful informal discovery.[3] Decl. of William B. Federman in Support of Pl.'s Unopposed Mot. for Preliminary Approval of Class Action Settlement ("Federman Decl."), ¶ 4. On November 13, 2023, Plaintiff served informal discovery requests on Defendants. *Id.* On November 29, 2023, Defendants served informal discovery requests on Plaintiff. *Id.* Thereafter, both Parties exchanged documents and information responsive to these informal discovery requests, allowing them to fully evaluate the strengths and weaknesses of their positions. *Id.*

On December 21, 2023, the Parties engaged in a full day mediation session with

---

[2] The types of PHI and PII compromised varies by individual.
[3] The Parties also exchanged Initial Disclosures pursuant to Rule 26 on October 16, 2023. Federman Decl., ¶ 4.

Christopher L. Griffin of Griffin Mediation (the "Mediator"). *Id.* ¶ 5. Although a settlement was not reached at the mediation, considerable progress was made. *Id.* Significant arm's-length settlement negotiations took place between the Parties in the weeks following the mediation, including with the assistance of the Mediator. *Id.* The Parties were successful in reaching an agreement in principle to resolve the Action in the weeks following the mediation. *Id.* The terms of the settlement reached are memorialized in the Settlement Agreement, which was negotiated at arm's-length, in good faith and without collusion, by capable and experienced counsel, with full knowledge of the facts, the law, and the inherent risks in the Litigation, and with the active involvement of the Parties. *Id.* Plaintiff now seeks preliminary approval of the Settlement Agreement.

### III.    THE SETTLEMENT TERMS

#### A. Definition of the Settlement Class

Plaintiff requests certification, for settlement purposes only, a nationwide class of 41,166 individuals, defined as follows:

> [A]ll persons residing in the United States whose protected health information or personally identifiable information was potentially compromised in the Data Incident impacting ARX Patient Solutions, LLC, ASSISTRX, Inc., and/or ARX Patient Solutions Pharmacy, LLC, that was discovered in or around March 2022.

SA, ¶ 13(dd).

#### B. Benefits to the Settlement Class

##### 1.   Reimbursement Out-of-Pocket Losses

Settlement Class Members may submit a claim for reimbursement for Out-of-

Pocket Losses, not to exceed $600.00. *Id.* ¶ 14. In order to receive reimbursement for Out-of-Pocket Losses, Settlement Class Members must submit a valid Claim Form, and documentation supporting the loss.[4] *Id.* ¶ 14(a).

## 2. Reimbursement Extraordinary Losses

Settlement Class Members may submit a claim for reimbursement for Extraordinary Losses up to $6,500.00. *Id.* ¶ 15. To receive reimbursement a Settlement Class Member must submit a claim and supporting documentation showing: (i) the loss is an actual, documented, and unreimbursed monetary loss; (ii) the loss was more likely than not caused by the Data Incident; (iii) the loss occurred during March 23, 2022, through the date of the end of the Claims Period; (iv) the loss is not already covered by one or more of the exemplar items listed in the Out-of-Pocket Losses category; and (v) the Settlement Class Member made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance. *Id.* ¶ 13(p).

## 3. Reimbursement for Lost Time

Additionally, all Settlement Class Members may submit a claim for reimbursement of Lost Time up to three (3) hours at $30.00 per hour (a maximum of $90.00 per Settlement Class Member). *Id.* ¶ 14(b). Settlement Class Members can receive reimbursement of Lost Time with a brief description of (i) the action taken in

---

[4] '"Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but may be considered to add clarity to or support to other submitted documentation. Out-of-Pocket Losses that are compensated under this Settlement Agreement are those that are reasonable and customarily incurred when responding to this type of Data Incident and which occurred on or after March 23, 2022." SA, ¶ 14(a).

response to the Data Incident; (ii) the time associated with each action; and (iii) an attestation. *Id.*

### 4. Aggregate Cap

Settlement benefits are subject to an aggregate cap of $850,000.00. *Id.* ¶ 13(c). Notably, the cost of Notice to the Settlement Class, any Service Award approved by the Court, and the cost of the Remedial Measures ARX has or will implement will be paid for outside of the Aggregate Cap. *Id.* ¶¶ 17, 26, 51.

### 5. Credit Monitoring and Identity Theft Protection

All Settlement Class Members are automatically eligible to receive, free of charge, three years of one-bureau credit monitoring and identity-protection services. *Id.* ¶ 16.

### 6. Remedial Measures

ARX has already implemented the additional remedial measures as set forth below:

    a. ARX applies and will continue to apply the principle of least privilege.[5]

    b. ARX has implemented and will maintain appropriate firewalls to restrict access to authorized users only.

    c. ARX has updated its data security policies to discourage employees from sending emails attaching PII and PHI.

---

[5] The principle of least privilege is a concept in computer security that limits users' access rights to only what is strictly required to do their jobs.

> d.  ARX has ensured multi-factor authentication is implemented and used
> by all employees.

*Id.* ¶ 17. The costs associated with implementing and/or maintaining these remedial measures are separate and apart from the Settlement Fund. *Id.*

### C. Notice Program, Opt-Outs, and Exclusions

The proposed Notice scheme provides all information required by Rule 23(c)(2)(B). The Notice Plan lays out a program for notifying Class members of the Settlement and their rights in simple terms. *See id.* §§ VII–IX. The details of the notice process, opt-outs, and exclusions are outlined in Section VI, *infra*.

### D. Attorney's Fees, Expenses, and Service Awards

The Parties were unable to reach a consensus regarding the amount or methodology of calculation of attorneys' fees, costs, and expenses that Class Counsel are permitted to request from the Court under the terms of the Settlement Agreement. SA, ¶ 50. Therefore, no later than four (4) weeks prior to the Final Fairness Hearing, Class Counsel will file a motion with the Court seeking payment of Class Counsel's attorneys' fees, costs, and expenses from ARX, which may include a multiplier. *Id.* No later than two (2) weeks prior to the Final Fairness Hearing, ARX will submit briefing supporting its position on Class Counsel's attorneys' fees, costs and expenses, which is likely to oppose any requested multiplier. *Id.*

The Parties agree Class Counsel may request from the Court a Service Award for the Class Representative in the amount of Two Thousand Dollars ($2,000.00), to be paid separate and apart from the Aggregate Cap. *Id.* ¶ 51.

## IV.   APPLICABLE LAW

When deciding a motion for preliminary approval of a class action settlement, a court first evaluates whether certification of a settlement class is appropriate under Federal Rule of Civil Procedure 23(a) and (b). *Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1306 (S.D. Fla. 2015). Class certification is proper when the proposed class meets all the requirements of Rule 23(a) and one or more subsections of Rule 23(b). *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1267 (11th Cir. 2019). Rule 23(a) requires: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a)(1)–(4). Rule 23(b)(3) requires that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Eleventh Circuit also requires that the class representative has standing to sue and that the proposed class is adequately defined and clearly ascertainable. *See Prado-Steiman ex rel Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000); *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012).

If certification of a settlement class is appropriate, a court then determines if the proposal is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To do so, the Court considers whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method

9

of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Furthermore, the Eleventh Circuit "instruct[s] district courts to consider several additional factors." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). These additional factors are:

there was no fraud or collusion in arriving at the settlement and ... the settlement was fair, adequate and reasonable, considering (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986 (the "*Bennett* factors").

"Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-60646-CIV, 2010 WL 2401149, at *2 (S.D. Fla. June 15, 2010) (citations omitted) ("Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient."); *see also O'Connor v. Worthington PJ, Inc.*, No. 2:16-cv-608, 2017 WL 6762436, at *3 (M.D. Fla. Dec. 13, 2017).

## V.    ARGUMENT AND AUTHORITIES

### A. Rule 23(a) Requirements are Met for Settlement Purposes.

***Standing.*** [A]ny analysis of class certification must begin with the issue of

10

standing." *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987). To satisfy Article III standing, a plaintiff must "(1) suffer[] an injury in fact, (2) that is fairly traceable to the challenged conduct of defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiff extensively argued she had Article III standing in her Opposition to Defendants' Motion to Dismiss. *See* ECF No. 32. For the reasons stated therein, the standing requirement is met.

**Numerosity**. The next prerequisite is that the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This requirement is "a generally low hurdle" and "less than twenty-one is inadequate ... [and] more than forty is adequate..." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) (internal quotations and citation omitted). The Settlement Class here includes over 41,000 individuals, satisfying the numerosity requirement.

**Ascertainability**. A class must be "adequately defined and clearly ascertainable." *Little*, 691 F.3d at 1304. Identifying Settlement Class Members here is simple and objective: Defendants have a list of all individuals to whom it sent notice that their information was compromised in the Data Incident. As such, ascertainability is satisfied.

**Commonality**. Next, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23 (a)(2). Commonality may be shown when the claims of all class members "depend upon a common contention," with "even a single common question" sufficing. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545, 2557 (2011).

The common contention must be capable of class-wide resolution and the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2545. Here, Plaintiff's claims turn on the adequacy of ARX's data security in protecting Plaintiff's and the Class's PII. Evidence to resolve that claim does not vary among class members, and so can be fairly resolved, at least for purposes of settlement, for all Settlement Class Members at once. Thus, commonality is met.

*Typicality.* A class representative's claims must also be typical of the putative class they seek to represent. Fed. R. Civ. P. 23(a)(3). This requirement "measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003) (citation omitted). Class members' claims need not be identical to satisfy this requirement. *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012). Instead, "[a] sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Plaintiff's interests are aligned with the Settlement Class because she received a notice letter that her PHI/PII may have been compromised as a result of the Data Incident and was therefore impacted by the same allegedly inadequate data security that allegedly harmed the rest of the Settlement Class. Thus, Typicality is met.

*Adequacy.* Finally, Rule 23(a)(4) requires that "the representative parties ... fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

"[C]lass counsel and the class representatives are adequate representatives of the class if (1) 'plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation' and (2) the plaintiffs lack 'interests antagonistic to those of the rest of the class.'" *Holman v. Student Loan Xpress, Inc.*, No. 8:08-cv-305-T-23MAP, 2009 WL 4015573, at *2 (M.D. Fla. Nov. 19, 2009) (quoting *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987)). The Class Representative here has no conflicts with the Settlement Class and has demonstrated her adequacy by: (i) selecting well-qualified Class Counsel; (ii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iii) being available as needed throughout the litigation; and (iv) monitoring the Litigation. Federman Decl., ¶ 12. Moreover, Class Counsel is adequate because of his vast experience as a vigorous class action litigator. *See id.* at Ex. 2. Both Plaintiff and Class Counsel are well suited to advocate on behalf of the Class.

**B. Rule 23(b) Requirements Are Met for Purposes of Settlement**

**i.** *Common Questions of Law and Fact Predominate*

A predominance inquiry looks at "the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997). To satisfy Rule 23(b)(3)'s predominance prong, a court must find that issues subject to generalized proof applicable to the class as a whole "predominate over those issues that are subject only to individualized proof." *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) (quotation omitted). "[C]ommon issues of fact and law predominate if they

13

have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016)).

All Class Members had their PHI/PII compromised in the Data Incident and the security practices at issue did not vary from person to person. Simply put, all Class Members put their data in the same box. The box was either protected or unprotected in accordance with applicable law and industry standards, so whether there was a breach of a duty will not differ among class members. Thus, because these common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis. Thus, the predominance requirement is readily satisfied.

### ii.    *A Class Action is the Superior Method of Adjudication*

Moreover, certification of this suit as a class action is superior to other methods to fairly, adequately, and efficiently resolve the claims asserted. To satisfy the superiority requirement of Rule 23(b)(3), a movant must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Adjudicating individual actions here is impracticable: the amount in dispute for individual class members is too small, the technical issues involved too complex, and the expert testimony and document review too costly. The individual amounts here are insufficient to allow anyone to file and prosecute an individual lawsuit—at

least not with the aid of competent counsel. Rather, individual prosecution of claims would be prohibitively expensive, needlessly delay resolution, and may lead to inconsistent rulings.[6] Thus, the Court should certify the Class pursuant to Rule 23(b)(3).

### C. The Rule 23(e) Factors and the Bennet Factors are Satisfied.

With Rule 23 satisfied as to preliminary class certification, the Court segues into determining preliminarily if the Settlement is fair, adequate, and reasonable under Rule 23(e)(2) and the corresponding *Bennett* factors. At this juncture, "the court's primary objective ... is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing." *Morris v. US Foods, Inc.*, No. 8:20-CV-105-SDM-CPT, 2021 WL 2954741, at *7 (M.D. Fla. May 17, 2021), report and recommendation adopted, No. 8:20-CV-105-SDM-CPT, 2021 WL 6125575 (M.D. Fla. July 14, 2021) (quoting William B. Rubenstein, 4 Newberg on Class Actions § 13:10 (5th ed. Supp. 2020)). In the end, courts have substantial discretion in approving a settlement agreement. *Bennett*, 737 F.2d at 986. In exercising this discretion, courts consider the "strong judicial policy favoring settlement as well as ... the realization that compromise is the essence of settlement." *Id.* (citation omitted). Courts also "give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the

---

[6] Because this Action is being settled on a class-wide basis, such theoretical inefficiencies are resolved—and the Court need not consider further issues of manageability relating to trial. *See Amchem Prods.*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems").

potential risks." *Pierre-Val v. Buccaneers Ltd. P'ship*, No. 8:14-cv-1182, 2015 WL 3776918, at *1 (M.D. Fla. June 17, 2015) (citations omitted).

### 1. Fed. R. Civ. P. 23(e)(2)(A): Plaintiff and Class Counsel have Adequately Represented the Class.

The first factor heavily weighs in favor of granting preliminary approval because both Class Counsel and the Class Representative have adequately represented the Class. Class Counsel have adequately represented the Class by fully investigating the facts and legal claims; preparing the complaints; briefing an opposition to Defendants' motion to dismiss; requesting, obtaining, and reviewing informal discovery from ARX; drafting a comprehensive mediation statement assessing the legal and factual strengths and weaknesses of the case; and participating in mediation and a lengthy negotiation process. Federman Decl., ¶¶ 4–7. Additionally, the Settlement Class Representative has also demonstrated her adequacy by: (i) selecting well-qualified Class Counsel; (ii) producing information and documents to Class Counsel to permit investigation and development of the pleadings; (iii) being available as needed throughout the litigation; and (iv) monitoring the Litigation. Thus, this factor weighs in favor of granting preliminary approval. *Id.* ¶ 12.

### 2. Fed. R. Civ. P. 23(e)(2)(B): the Settlement was Negotiated at Arm's Length

The proposed settlement was negotiated at arm's length, without collusion, and with the assistance of a qualified and respected mediator, Chrisopher L. Griffin. *Id.* ¶ 5. As part of the mediation process, the Parties exchanged and provided the mediator with detailed mediation statements outlining the strengths and weaknesses of their

claims and defenses and exchanged informal discovery. *Id.* The fact that the Settlement was achieved through well-informed and arm's-length neutrally supervised negotiations weighs in favor of granting preliminary approval under Rule 23(e)(2)(B).

### 3. Fed. R. Civ. P. 23(e)(2)(C)(i) and *Bennett* Factors 1–4: the Relief Provided is Adequate

When considering the likelihood of success at trial, the complexity, expense, and duration of the litigation, the relief provided is exceptionally reasonable. Simply stated, this case could drag on for years. Pre-trial litigation would be extensive, with voluminous discovery needed from ARX and any third-party companies that ARX has used in an information technology capacity. Experts would be required to testify regarding ARX's data security practices, industry standard practices, and how its practices deviated therefrom. Substantial fact-finding would be required into what information was taken, how, and what impact this had and will have on the Settlement Class. Plaintiff would need to survive potential dispositive motions and prevail on a motion for class certification. Such motion practice, and potential appeals, could consume years, during which the law could change and threaten the claims. Given the complexity of the claims and arguments here, a lengthy trial would follow. Litigation would be extraordinarily complex, and it could take several years for the Class to see any real recovery, if any at all. Thus, the anticipated potential litigation here favors approval. Federman Decl., ¶ 10.

While Plaintiff is confident in her claims, there is risk here, as is true in all complex class actions—and this area of law is especially risky. Historically, data

breach cases face substantial hurdles in surviving even the pleading stage. *See, e.g.,* *Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 U.S. Dist. LEXIS 71996, at *2–4 (S.D.N.Y. June 25, 2010) (collecting cases). As another court observed in finally approving a settlement with similar class relief, "[d]ata breach litigation is evolving; there is no guarantee of the ultimate result . . . [they] are particularly risky, expensive, and complex." *Fox v. Iowa Health Sys.*, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021).[7] Thus, given this risk and uncertainty, settlement is the more prudent course when a reasonable one can be reached.

In light of the above, the $850,000 achieved and made available to the Settlement Class is an outstanding result. Federman Decl., ¶ 6. The Settlement approximates a payment of $20.65 per Settlement Class Member—which exceeds the data breach Settlement approved by this Court in *Hymes v. Earl Enterprises Holdings, Inc.*, No. 6:19-CV-644-CEM-GJK, 2021 WL 1781461 (M.D. Fla. Feb. 10, 2021) (settlement fund of only $650,000 and coupons), and those regularly approved elsewhere. *See In re The Home Depot, Customer Data Sec. Breach Litig.*, No. 1:14-MD-2583 (N.D. Ga. Mar. 7, 2016) (approximately $0.51 per class member); *In re Target Customer Data Sec. Breach Litig.*, No. MDL 14-2522, (D. Minn. Mar. 18, 2015) ($0.17 per class member). The above underscore the exemplary resolution for the Settlement

---

[7] To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. The damages methodologies, while theoretically sound in Plaintiff's view, remain untested in a disputed class certification setting and unproven in front of a jury. And as in any data breach case, establishing causation on a class-wide basis is rife with uncertainty. *See, e.g., In re Hannaford Bros. Co. Cust. Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013).

Class.

    **4. Fed. R. Civ. P. 23(e)(2)(C)(ii)–(iv) and Fed. R. Civ. P. 23(e)(2)(D): the effectiveness of any proposed method of distributing relief to the class, the terms of any proposed award of attorney's fees, including timing of payment, any agreement required to be identified under Rule 23(e)(3)[8] and class members are treated equitably relative to each other.**

Moreover, the method of distributing the settlement benefits will be equitable and effective. As explained above, all Class Members are eligible to make a claim for Out-of-Pocket Losses, Lost Time, Extraordinary Losses, and Credit Monitoring. The task of validating those claims will be delegated to the Settlement Administrator, a neutral party which has significant experience processing these claims in similar cases. The only difference in treatment among Class Members is that those who incurred and submit a claim for Out-of-Pocket Loss, Extraordinary Loss, and Lost Time Claims will—appropriately and equitably—receive payments in proportion to the amount of their losses. Additionally, and if approved by the Court, Plaintiff will receive a Service Award of two thousand dollars ($2,000.00) for her service as a Class Representative. Service awards are typically and frequently granted. *See Venerus v. Avis Budget Car Rental, LLC*, No. 6:13-CV-921-CEM-RMN, 2023 WL 4673481, at *2 (M.D. Fla. May 25, 2023); *Arnold v. State Farm Fire & Cas. Co.*, No. 2:17-CV-148-TFM-C, 2023 WL 7308098, at *1 (S.D. Ala. Nov. 6, 2023) ("The Court notes some contradictory legal authority based on the recent holdings in *Johnson v. NPAS Solutions, LLC*, 975 F.3d

---

[8] Other than the Settlement Agreement, there are no other agreements required to be identified under Rule 23.

1244 (11th Cir. 2020). Specifically, Johnson held that awards that compensate a class representative for his time are prohibited. *See Johnson*, 975 F.3d at 1260. However, Johnson was in the context of federal claims brought under the Telephone Consumer Protection Act, 47 U.S.C. § 227. *Id.* at 1249. Following Johnson, a number of district courts in the Eleventh Circuit have found class representative service awards are still permitted under certain circumstances. The Court agrees with its several sister courts in this Circuit that *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020), is inapplicable in diversity jurisdiction cases where the underlying claims arise under state law."); *see also James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-SDM-JSS, 2017 WL 2472499, at *2 (M.D. Fla. June 5, 2017) (incentive award of $5,000); *N. Star Capital Acquisitions, LLC v. Krig*, No. 3:07-cv-264-TJC-MCR, 2011 WL 65662, at *6 (M.D. Fla. Jan. 10, 2011) (incentive award of $5,000). For these reasons, the plan of distribution is both equitable and effective.

The Parties were unable to reach a consensus regarding the amount or methodology of calculation of attorneys' fees, costs, and expenses that Class Counsel are permitted to request from the Court under the terms of the Settlement Agreement. SA, ¶ 50. Therefore, no later than four (4) weeks prior to the Final Fairness Hearing, Class Counsel will file a motion with the Court seeking payment of Class Counsel's attorneys' fees, costs, and expenses from ARX, which may include a multiplier. *Id.* No later than two (2) weeks prior to the Final Fairness Hearing, ARX will submit briefing supporting its position on Class Counsel's attorneys' fees, costs and expenses, which is likely to oppose any requested multiplier. *Id.* Any attorneys' fees, costs,

expenses and/or Service Award awarded by the Court shall be paid within twenty-one (21) days after the Effective Date of Settlement. *Id.* ¶ 52. This request, if granted, will not affect the relief made available to the Class under the Settlement Agreement.

### 5. Bennet Factor 5: the substance and amount of opposition to the settlement

This cannot be discerned at this time because notice has not yet been given to the Class.

### 6. Bennett Factor 6: the stage at which the settlement was achieved

Although the Parties reached a proposed settlement before the end of the discovery period, Class Counsel made an informed decision regarding the appropriateness of settlement. Prior to negotiating the Settlement, Class Counsel sought and obtained informal and formal discovery from ARX on a number of topics, including: the number of individuals whose PII was compromised during the Data Incident; the types of PII potentially compromised; the mechanics of the Data Incident; the remedial actions ARX took after the Data Incident; and the terms of any potentially applicable insurance coverage. Federman Decl., ¶ 7. Class Counsel thoroughly evaluated this in their analysis of damages. *Id.* Through the above process and the mediation, Class Counsel came to understand the size of the Settlement Class, the issues at hand, and obtain an excellent settlement for class members. *Id.* ¶¶ 4–13. Thus, the Court should find that Class Counsel conducted sufficient fact-finding even at this early stage in the litigation.

## VI.    NOTICE PROGRAM

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances…who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."  Fed. R. Civ. P. 23(e)(1). Notice is "adequate if it may be understood by the average class member." Newberg, § 11:53 at 167.

No later than 10 days after the entry of the preliminary approval order, ARX will provide the Settlement Administrator with a list of names and any last known physical address of each Settlement Class Member. SA, ¶ 27(a). The Settlement Administrator will then mail the postcard notice to members of the Class. *Id.* at Ex. B. The Notice sent to Class Members will also inform Class Members of their "opt-out" and objection rights. *Id.* Additionally, the Settlement Administrator will establish a website where Class Members can view and access the Notices, Claim Form, Settlement Agreement, and other pertinent information about the Settlement. *Id.* ¶ 27(c). The Settlement website will also include a toll-free help line, e-mail address, and mailing address through which Settlement Class Members may contact the Settlement Administrator directly. *Id.* ¶ 27.

The proposed Notices are plain and easily understood. The Notices describe the claims, the relief provided under the Settlement, and Settlement Class Members' rights and options, including the deadlines and means of submitting a Claim Form,

objecting, and/or appearing at the Final Approval Hearing. *Id.* at Ex. B. The Notices also provide information regarding attorney's fees and Service Award Payments. *Id.* Plaintiff submits that the Notice Program is reasonable and provides the best notice practicable under the circumstances.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court (i) grant preliminary approval of the proposed Settlement; (ii) preliminarily certify a class for purposes of Settlement; (iii) appoint Plaintiff as the Class Representative; (iv) appoint William B. Federman of Federman & Sherwood as Class Counsel; (v) approve the Parties' proposed form and method of giving notice of the pendency of this action and the Settlement to the Settlement Class; (vi) direct notice be given to the Settlement Class; (vii) schedule a hearing at which time the Court will consider the request for final approval of the Settlement and request for attorneys' fees and expenses; and (viii) grant such other relief and further relief as the Court deems proper

Dated: April 23, 2024                    Respectfully submitted,

*/s/: William B. Federman*
William B. Federman (*pro hac vice*)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
T: (405) 235-1560
wbf@federmanlaw.com
***Proposed Class Counsel for Plaintiff and the Class***

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2024, a true and correct copy of the foregoing was electronically filed and served using CM/ECF.

/s/ *William B. Federman*
William B. Federman

## LOCAL RULE 3.01(g) CERTIFICATION

I hereby certify that on April 23, 2024, Counsel for Plaintiff conferred with Counsel for Defendants, who do not oppose the relief sought herein.

/s/ *William B. Federman*
William B. Federman