UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

PHYLLIS KAMINOWITZ,

                Plaintiff,

v.                                   **Case No: 6:23-cv-1446-WWB-EJK**

ASSISTRX, INC., ARX PATIENT
SOLUTIONS, LLC, and ARX
PATIENT SOLUTIONS
PHARMACY, LLC,

                Defendants.

## REPORT AND RECOMMENDATION

This cause comes before the Court on Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and Incorporated Memorandum of Law in Support (the "Motion") (Doc. 47), filed April 23, 2024. Upon consideration, I respectfully recommend that the Motion be granted.

## I.    BACKGROUND

Plaintiff Phyllis Kaminowitz alleges that in March 2022, Defendants AssistRX, Inc., ARX Patient Solutions, LLC, and ARX Patient Solutions Pharmacy, LLC, learned that an employee account was accessed and compromised by an unauthorized third party. (Doc. 1 ¶ 2.) Plaintiff alleges that Defendants admitted this improperly accessed email account contained sensitive, personally identifiable information ("PII") and protected health information ("PHI") of both Plaintiff and class members, consisting of approximately 41,166 individuals. (*Id.* ¶¶ 1, 3.) Further, Plaintiff alleges

that this breach was due to Defendants' failure to adequately safeguard Plaintiff's and class members' PII and PHI. (*Id.* ¶ 1.) Moreover, despite the breach occurring in March 2022, Defendants did not discover the breach until February 2023 and did not begin notifying Plaintiff or class members about the breach until June 2023. (*Id.* ¶¶ 5, 7.) On October 17, 2023, Plaintiff, on behalf of similarly situated individuals, filed a five-count class action Complaint in this Court against Defendants bringing claims of negligence, unjust enrichment, breach of implied contract, and violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat § 501.201, *et seq.* (Doc. 1.)

The parties ultimately agreed to resolve the case. To that end, the parties drafted a proposed settlement agreement (the "Settlement Agreement") (Doc. 48-1) and now move for the Court's preliminary approval of the Settlement Agreement. (Doc. 47.) The Settlement Agreement provides the following relief: (1) reimburses out-of-pocket losses up to $600.00 for expenses incurred as a result of the data incident; (2) reimburses each class member for up to three hours of lost time spent responding to the data incident at a rate of $30.00 per hour; (3) provides up to $6,500.00 in extraordinary loss reimbursement to settlement class members who experienced loss as a result of identity theft or fraud; (4) all settlement class members will become eligible to receive three years of one-bureau credit monitoring identity theft protection services; and (5) the above-described payments will be paid on a claims-made basis, not to exceed the aggregate cap of $850,000.00. (*Id.* at 2–3.)  Finally, the parties request that the Court to schedule a fairness hearing to consider the parties' request for

final approval of the Settlement Agreement and the parties' request for attorney fees and expenses. (*Id*.)

## II.    STANDARD

Court approval of a class action settlement proceeds in two stages. First, the parties present a proposed settlement to the court for "preliminary approval" and ask the court to make a preliminary determination regarding class certification. *See generally* Fed. R. Civ. P. 23. At this preliminary stage, the Court must determine whether it "will likely be able to" 1) certify the class for purposes of judgment on the proposed settlement, and 2) approve the settlement proposal under Rule 23(e)(2). Fed. R. Civ. P. 23(e)(1)(B). If the Court is satisfied with both inquiries, it should "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. *Id*. After notice to the class, the Court should hold a fairness hearing at which class members may appear to support or object to the proposed hearing. Fed. R. Civ. P. 23(e)(2).

During the preliminary stage, the Court is required to make a preliminary determination that the proposed settlement "is fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977))[1]. When making this determination, the Eleventh Circuit has instructed district

---

[1] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

courts to consider the following factors: 1) the likelihood of success at trial; 2) the range of possible recovery; 3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; 4) the anticipated complexity, expense, and duration of litigation; 5) the opposition to the settlement; and 6) the stage of proceedings at which the settlement was achieved. *Id.* There is a strong judicial policy in favor of settlement, and compromise is the essence of settlement. *Id.* (citing *United States v. City of Miami, Fla.*, 614 F.2d 1322, 1344 (5th Cir. 1980)).

"If the proposed settlement falls within the 'range of possible approval,' then the settlement should be preliminarily approved.'" *Gilbert v. Bioplus Specialty Pharmacy Servs.*, LLC, No. 6:21-cv-2158-RBD-DCI, 2024 WL 1464083, at *13 (M.D. Fla. Feb. 1, 2024) (quoting *Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV-MARTINEZ, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007)). After determining the fairness of the settlement terms, the Court must then communicate the proposed settlement to the class, review and approve the proposed form of notice to the class, and authorize the manner and form of dissemination of the notice. *Bermudez v. CFI Resorts Mgmt., Inc.*, 576 F. Supp. 3d 1099, 1103 (M.D. Fla. 2020) (citing Rule 23(c)(2),(3)).

## III.    DISCUSSION

The parties seek to certify the following class:

> All persons residing in the United States whose protected health information or personally identifiable information was potentially compromised in the Data Incident impacting ARX Patient Solutions, LLC, AssistRX, Inc., and/or ARX Patient Solutions Pharmacy, LLC, that was discovered in or around March 2022.

(Docs. 47 at 5; 48-1 at 11.)

A class may be certified only if (1) the class is so numerous that joinder of all members would be impracticable; (2) there are questions of fact and law common to the class; (3) the claims of the representatives are typical of the claims of the unnamed members; and (4) the named representatives will be able to represent the interests of the class adequately and fairly. Fed. R. Civ. P. 23(a). These prerequisites to class certification are referred to as "numerosity, commonality, typicality, and adequacy of representation," and are "designed to limit class claims to those fairly encompassed by the named plaintiffs' individual claims." *Prado v. Bush*, 221 F.3d 1266, 1278 (11th Cir. 2000) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 349 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). The burden of establishing the propriety of class certification rests with the advocate of the class. *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003). In addition to the prerequisites of Rule 23(a), at least one of the three alternative subsections of Rule 23(b) must be satisfied to certify a class. *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1190 (11th Cir. 2009). Although Defendant consents to class certification, the undersigned will nevertheless review the Rule 23 elements.

### A. Standing

"[A]ny analysis of class certification must begin with the issue of standing." *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987). To establish Article III standing, the "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). For the plaintiff to show an injury in fact, a plaintiff must have first suffered an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560 (internal marks omitted) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). For the plaintiff to show the injury in fact is fairly traceable to the challenged conduct, "there must be a causal connection between the injury and the conduct complained of." *Id*. While the Motion itself does not discuss standing (Doc. 47), the Motion refers the Court to Plaintiff's Response in Opposition to Defendants' Motion to Dismiss (Doc. 32), where Plaintiff does argue that Article III standing exists.

In Plaintiff's Response, Plaintiff alleges an injury in fact since Plaintiff's sensitive PHI and PII were accessed by unauthorized persons because of Defendants' failure to properly safeguard the information. (*Id*. 7–8.) Plaintiff lists examples of this sensitive information, including social security numbers, prescription information, patient account numbers, health account numbers, and health insurance group

numbers. (*Id.* at 7.) As such, Plaintiff has demonstrated a concrete injury in fact causally linked to Defendants' failure to safeguard Plaintiff's legally protectable information, which is likely to be redressed by a favorable judicial decision against Defendants. *Lujan,* 504 U.S. at 560. Therefore, the undersigned recommends finding that Plaintiff has sufficient standing to pursue the class claims. *Spokeo, Inc. v. Robins*, 578 U.S., at 338; *Lujan,* 504 U.S. at 560.

### B. Is the Class Adequately Defined and Clearly Ascertainable?

"Before a district court may grant a motion for class certification, a plaintiff seeking to represent a proposed class must establish that the proposed class is 'adequately defined and clearly ascertainable.'" *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). "A class is ascertainable if membership is based on objective criteria." *Mount v. Pulte Home Co., LLC*, No. 6:20-cv-2314-RBD-LRH, 2022 WL 3446217, at *2 (M.D. Fla. Aug. 17, 2022) (citing *Karhu v. Vital Pharm.*, 621 F.App'x 945, 946 (11th Cir. 2015)).

The undersigned recommends finding Plaintiff's proposed class to be adequately defined and clearly ascertainable. The proposed class consists of all individuals whose information was compromised in the data incident and those individuals to whom Defendants sent notices that their information had been compromised in the data incident. (Doc. 47 at 11.) The undersigned finds that a list or report of these individuals is adequately defined, and the class members are clearly ascertainable. *See Bermudez*, 576 F. Supp. 3d at 1103 (finding that proposed class

members were adequately defined and ascertainable since a party submitted a list with proposed class members).

### C. Numerosity

Numerosity under Rule 23(a)(1) is "generally [a] low hurdle," and anything over forty individuals satisfies the numerosity guidelines articulated by the Eleventh Circuit. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) (citing *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)). Here, Plaintiff alleges that the class is comprised of approximately 41,100 individuals. (Doc. 47 at 11.) Therefore, the undersigned recommends finding that the numerosity requirement has been satisfied. *Vega,* 564 F.3d at 1267.

### D. Commonality

To establish commonality for class certification under Rule 23(a)(2), there must be "a common contention of such nature that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.,* 564 U.S. at 350. Here, Plaintiff's claims about the adequacy of Defendants' data security in protecting PHI and PII applies to all class members. (Doc. 47 at 11.) Since the adequacy of Defendants' data security "is central to the validity of each one of the claims," the undersigned recommends finding that the commonality requirement has been satisfied. *Wal-Mart Stores, Inc.,* 564 U.S. at 350.

### E. Typicality

To establish typicality under Rule 23(a)(3), "[c]lass members' claims need not be identical . . . rather there need only exist 'a sufficient nexus . . . between the legal claims of the named class representatives and those of individual class members to warrant class certification.'" *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) (quoting *Prado*, 221 F.3d at 1278–79)). This nexus exists "if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984). Plaintiff states that Plaintiff's interests align with the class since Plaintiff received a notice that Plaintiff's PHI and PII might have been compromised because of Defendants' inadequate data security, and the class members' sensitive, personal information was compromised in the same way. (Doc. 47 at 12.) Since Plaintiff's and the class members' claims similarly arise from Defendants' alleged inadequate data security, they have the same legal claims, and the undersigned recommends finding that the typicality requirement has been satisfied. *Ault,* 692 F.3d at 1216.

### F. Adequacy of Representation

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interest of the class. This turns on two questions: (1) whether the named plaintiff's counsel is qualified, experienced, and generally able to conduct the proposed litigation, and (2) whether the named plaintiff has interests antagonistic to those of the

rest of the class. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987). The undersigned has reviewed Attorney William B. Federman's Declaration in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (Doc. 48), as well as Federman's attached resume. (48-2.) The undersigned finds that Federman is an experienced litigator who is capable of representing Plaintiff and the class in this action. *Kirkpatrick,* 827 F.2d 726. Moreover, Plaintiff represents that there is no conflict with the class (Doc. 47 at 13), and the undersigned has not identified any interest antagonistic to the class. *Kirkpatrick,* 827 F.2d 726. Thus, the undersigned recommends finding that the adequacy of representation requirement has been satisfied.

## G. Questions of Law or Fact Common to Class Members Predominate

After making the prerequisite showing for a class action, a plaintiff must also demonstrate that this action falls within one of the categories identified in Rule 23(b). *Diaz v. Hillsborough Cnty Hosp. Auth.*, 165 F.R.D. 689, 694 (M.D. Fla. 1996). Certification may be appropriate where:

> [T]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability of undesirability of concentrating litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

"To obtain Rule 23(b)(3) class certification, 'the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof.'" *Babineau,* 576 F.3d at 1191 (quoting *Kerr v. City of West Palm Beach,* 875 F.2d 1546, 1557–58 (11th Cir. 1989)). "Common issues of fact and law predominate if they 'ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.'" *Id.* (internal quotation marks omitted) (citing *Klay v. Humana, Inc.,* 382 F.3d 1241, 1255 (11th Cir. 2004)). Plaintiff states that Plaintiff's and class members' PHI and PII were stored in the same way. (Doc. 47 at 14.) Additionally, whether Defendants breached a duty through inadequate data security applies in the same way to Plaintiff and every class member. (*Id.*); *see also Gilbert,* 2024 WL 1464083, at *12 (holding that common issues of law predominate when the central issue is whether defendant violated FDUTPA, breached an implied contract, and engaged in negligent behavior by defendant's failure to protect individuals' private information from unauthorized access during a data incident).

Additionally, under Rule 23(b)(3), a plaintiff must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "[T]he superiority requirement of Rule 23(b)(3) turns on whether a class action is better than other available methods of adjudication." *Cherry v. Dometic Corp.,* 986 F.3d 1296, 1304–05 (11th Cir. 2021). To determine

whether a class action is superior to other available methods of adjudication, the Eleventh Circuit has set forth two considerations: (1) whether a class action creates more manageability problems than its alternatives, and (2) how the manageability concerns compare with the other advantages or disadvantages of a class action. *Id.* (citing *Klay*, 382 F.3d at 1272–73)).

Plaintiff here argues that it would be impracticable for the class to initiate individual actions; the amount in dispute for individual class members is too small; the technical issues involved are too complex; and the expert testimony and document review are too costly. (Doc. 47 at 14–15.) Moreover, given the nature of the class, it can be managed with little difficulty, and other methods of adjudicating the controversy would likely be inferior to a class action. Accordingly, the undersigned recommends that the Court find that a Rule 23(b)(3) class action is appropriate.

## H. Fairness, Reasonableness, and Adequacy of Proposed Settlement

Having addressed Rule 23(a) and Rule 23(b), the undersigned will now assess the fairness, reasonableness, and adequacy of the proposed Settlement Agreement. In the Motion, the parties seek preliminary approval of the Settlement Agreement. (Doc. 47.) The Court may approve a proposed class action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate[.]" Fed. R. Civ. P. 23(e)(2). The Court must consider the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;
>
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

*Id.* Further, the Eleventh Circuit has instructed district courts to consider the following factors: 1) the likelihood of success at trial; 2) the range of possible recovery; 3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; 4) the anticipated complexity, expense, and duration of litigation; 5) the opposition to the settlement; and 6) the stage of proceedings at which the settlement was achieved. *Bennett*, 737 F.2d at 986. The undersigned will assess the fairness, reasonableness, and adequacy requirements under Federal Rule of Civil Procedure 23(e)(2) before assessing the *Bennett* factors.

First, class counsel adequately represented the class by vigorously pursuing this litigation. This is evidenced by class counsel's investigation of the facts and legal issues, legal research and briefing in opposition to Defendants' Motion to Dismiss, research for and drafting a comprehensive mediation statement, and a lengthy negotiation process. (Docs. 47 at 16; 48-1 ¶¶ 4–7); Fed. R. Civ. P. 23(e)(2)(A).

Second, the parties' arms-length negotiations included weeks-long and extensive settlement negotiations, a mediation, and post-mediation follow-up negotiations between counsel. (Doc. 48-1 ¶¶ 4–7); Fed. R. Civ. P. 23(e)(2)(B).

Additionally, considering the costs, risks, and delay of trial and appeal; the effectiveness of the distribution of relief to the class; the terms of any attorney fee award; whether the parties entered an agreement required to be identified under Rule 23(e)(3); and whether the proposal treats class members equitably, the undersigned concludes the relief provided to the class in the Settlement Agreement is fair and adequate:

First, although Plaintiff believes that the claims asserted in this action are meritorious and that the class would ultimately prevail at trial, Plaintiff recognizes and understands the risks of continued litigation against Defendants, which may make any recovery for the class uncertain. (Doc. 47 at 17–18); Fed. R. Civ. P. 23(e)(2)(C)(i)

Second, there is no deficiency in the method of distributing relief to the class. All class members will become eligible to make a claim for out-of-pocket losses, lost time, extraordinary losses, and credit monitoring. (Docs. 47 at 19; 48-1 ¶¶ 14–17.) Every class member who makes a claim for out-of-pocket losses, lost time, or extraordinary losses will receive a payment in proportion to the amount of the loss. (Docs. 47 at 19; 48-1 ¶¶ 14–15.) These claims will be delegated to, and validated by, a settlement administrator—a neutral party that has significant experience processing these claims in similar kinds of actions. (Docs. 47 at 19; 48-1 at 5, 26.) Accordingly, the undersigned finds that the parties' proposed method of distributing relief to the class is likely to be effective. Fed. R. Civ. P. 23(e)(2)(C)(ii)

Third, on the terms of any attorney fee award, the parties could not agree on either an amount or methodology to calculate attorney fees and costs. (*Id.* at 20); Fed.

R. Civ. P. 23(e)(2)(C)(iii). Rule 23(h) provides that in a certified class action case, the court may award reasonable attorney fees and nontaxable costs that are authorized by law or by the parties' agreement, after a motion is filed under Rule 54(d)(2). Fed. R. Civ. P. 23(h)(1). To date, an attorney fee motion under Rule 54(d)(2) has not been filed. The parties propose that Plaintiff have until four weeks before the final fairness hearing to file a motion for attorney fees with the Court, and that Defendants have until two weeks before the final fairness hearing to submit their opposition to the motion. (Docs. 47 at 20; 48-1 at 28.) The parties also propose that any attorney fee award granted by the Court be paid within twenty-one days after the effective date of settlement. (Docs. 47 at 20–21; 48-1 at 28.) Accordingly, the undersigned recommends that the Court permit Plaintiff to file a motion for attorney fees pursuant to the parties' agreement and the Federal Rules of Civil Procedure.

Fourth, the parties do not indicate that there are any agreements that must be disclosed under Rule 23(e)(3). (Doc. 47); Fed. R. Civ. P. 23(e)(2)(C)(iv).

Finally, the Settlement Agreement treats the class members equitably: all class members will become eligible to make a claim for out-of-pocket losses, lost time, extraordinary losses, and credit monitoring. (Docs. 47 at 19; 48-1 ¶¶ 14–17); Fed. R. Civ. P. 23(e)(2)(D). For every class member who makes a claim for out-of-pocket losses, lost time, or extraordinary losses, the member will receive payments in proportion to the amount of the loss. (Docs. 47 at 19; 48-1 ¶¶ 14–15.) Plaintiff requests a $2,000.00 service award, which the undersigned recommends approving. *See Venerus v. Avis Budget Car Rental, LLC*, 674 F. Supp. 3d 1107, 1110 (M.D. Fla. 2023) (finding a

$25,000.00 service award to a class representative reasonable while noting Florida law allows service awards in class action cases).

Having assessed the fairness, reasonableness, and adequacy requirements under Federal Rule of Civil Procedure 23(e)(2), the undersigned will now consider the Eleventh Circuit *Bennett* factors. *Bennett*, 737 F.2d at 986. The undersigned first considers the likelihood of success at trial, and the complexity, expense, and duration of the litigation. "[I]t is not necessary to try the merits of the case in connection with reviewing the settlement." *Kuhr v. Mayo Clinic Jacksonville*, 530 F. Supp. 3d 1102, 1116 (M.D. Fla. 2021) (quoting *Elkins v. Equitable Life Ins. Co. of Iowa*, No. CivA96-296-Civ-T-17B, 1998 WL 133741, at *25 (M.D. Fla. Jan. 27, 1998)). In light of this, "the Court can limit its inquiry to determining 'whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of settlement.'" *Id.* (quoting *Ressler v. Jacobson*, 822 F. Supp. 1551, 1553 (M.D. Fla. 1992)).

Plaintiff states that the litigation would be extraordinarily complex, would involve a lengthy trial, and the prospect of prevailing at trial would be especially risky. (Doc. 47 at 17.) Given Plaintiff's risky prospects for prevailing at trial, Plaintiff recognizes that Plaintiff may not obtain any recovery at all. (*Id.*) In addition, Plaintiff states that pre-trial litigation would require substantial fact-finding with extensive and voluminous discovery, including the need for expert testimony. (*Id.*) Moreover, Plaintiff would need to survive potential dispositive motions and potential appeals, which could take years. (*Id.*); *See Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 698 (M.D. Fla. 2005) (finding that class members face significant risk in taking the

case to trial where the outcome is uncertain, a fact that weighs in favor of the Court approving the settlement). Therefore, when considering the record and the complexity of the litigation in this action, the undersigned finds that the risks and costs of litigation are outweighed by the benefits of settlement. *Kuhr*, 530 F. Supp. 3d at 1116.

Next, on the range of possible recovery, Defendants have created a $850,000.00 settlement fund, approximating a payment of $20.65 per class member. (Doc. 47 at 18.) The undersigned finds this range of possible recovery to be appropriate. *See Gilbert*, 2024 WL 1464083, at *15 (approving a $1,025,000.00 settlement fund with individual class members eligible for approximately $50.00 in a data incident action). Further, Defendants do not oppose the Settlement Agreement. (Doc. 47); *See Wave Lengths Hair Salons of Fla., Inc. v. CBL & Assocs. Properties, Inc.*, No. 2:16-cv-206-FtM-PAM-MRM, 2019 WL 13037028, at *8 (M.D. Fla. Aug. 22, 2019) ("The endorsement of well informed, experienced class action attorneys is strong support for the final approval of a settlement." (citing *Warrant v. City of Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988))).

The undersigned will finally consider the stage of proceedings at which the settlement was reached. This *Bennett* factor turns on "the degree of case development that class counsel have accomplished prior to settlement to ensure that counsel had an adequate appreciation of the merits of the case before negotiating." *Wave Lengths Hair Salons of Fla., Inc.*, 2019 WL 13037028, at *6 (quoting *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1348 (S.D. Fla. 2011)).

Here, the settlement was reached after Plaintiff obtained and evaluated discovery from Defendants on a variety of topics, including the number of individuals whose PII and PHI was compromised; the types of PII and PHI potentially compromised; and the remedial actions Defendants took after the Data Incident. (Doc. 47 at 21.) Since Settlement was reached after the parties engaged in mediation and weeks-long, extensive arms-length negotiations (Doc. 48-1 ¶¶ 4–7), the undersigned finds that Plaintiff had sufficient information to enter the Settlement. *See Preman v. Pollo Operations, Inc.*, No. 6:16-cv-443-Orl-41GJK, 2018 WL 3151673, at *10 (M.D. Fla. Apr. 12, 2018) (approving a class action settlement at an early stage of the proceedings since the settlement was the result of intensive arms-length negotiations between experienced attorneys), *report and recommendation adopted*, No. 6:16-cv-443-Orl-41GJK, 2018 WL 2126957 (M.D. Fla. May 9, 2018). Therefore, after considering all of the fairness factors, I recommend that the Court preliminarily approve the Settlement Agreement (Doc. 48-1).

## I. Notice

Rule 23(e) requires that the parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class. Fed. R. Civ. P. 23(e)(1). For a class to be certified under Rule 23(b)(3), such as this one, Federal Rule of Civil Procedure 23(c)(2)(B) requires the following:

> [T]he court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be one or more of the following: United States mail, electronic means, or other

appropriate means. The notice must be clearly and concisely state in plain, easily understood language:

(i) the nature of the action;

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion; and

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3)

Fed. R. Civ. P. 23(c)(2)(B).

The parties' proposed notice outlines the factual and procedural background of the action; provides a definition of the class; states the claims and issues; provides the reasons and benefits of the settlement; states the relief provided to class members under the settlement; mentions the class members' rights to exclude themselves from the settlement; states the class members' rights object to the settlement agreement; states the class members' rights to appear at the fair approval hearing and references the location, date, and time of the final approval hearing; states the class members' rights and options; sets deadlines to submit a claim form; delineates the scope of the releases; and notes that the parties could not agree on attorney fees. (Doc. 48-1 at 47–54.) Also, counsel for Plaintiff and Defendants are identified in the proposed notice. (*Id.* at 53.)

The Settlement Agreement states that no later than 10 days after entry of the Preliminary Settlement Approval Order, Defendants will provide the Settlement Administrator with a list of names and any last known physical address of every class member. (*Id.* at 17.) The Settlement Administrator will then mail the postcard notice to class members. (*Id.* at 19.) The Settlement Administrator will also establish a website where class members can view and access the notices, claim form, settlement agreement, and other pertinent information about the settlement. (*Id.* at 54.) This settlement website will include a toll-free help line, email address, and mailing address through which the class members can directly contact the Settlement Administrator. (*Id.*) The undersigned also observes that the proposed notice is written in plain, easy-to-understand language with bold headings. *See Bermudez*, 576 F. Supp. 3d at 1103 ("The notice appropriately informed class members through easy-to-understand bold headings: who was in the settlement class; what the case was about; what rights they were giving up; that they may enter an appearance with an attorney; that they could exclude themselves and how to do so; and that their claims would be released if they did nothing."). Thus, I recommend that the Court find that the proposed notice (Doc. 48-1 at 47–54) complies with Rule 23(e) and to direct the parties to give the proposed notice to the class. Fed. R. Civ. P. 23(c)(2)(B).

## IV.    RECOMMENDATION

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the Court:

1. **GRANT** Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and Incorporated Memorandum of Law in Support (Doc. 47);

2. Preliminarily **CERTIFY** the class for purposes of Settlement;

3. Preliminarily **APPROVE** the parties' Settlement Agreement (Doc. 48-1);

4. **APPOINT** Plaintiff Phyllis Kaminowitz as the Class Representative;

5. **APPOINT** Attorney William B. Federman as Class Counsel;

6. **APPROVE** the parties' proposed notice (Doc. 48-1 at 47–54) to potential class members;

7. **DIRECT** that notice be given to the class within twenty-one days of the order adopting this Report and Recommendation;

8. **ORDER** that Plaintiff may have until four weeks before the final fairness hearing to file a motion for attorney fees with the Court, and that Defendants may have until two weeks before the final fairness hearing to submit their opposition to the motion;

9. **SET** a final fairness hearing for a date at least 90 days from the date of any order adopting this Report and Recommendation.

## <u>NOTICE TO PARTIES</u>

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Recommended in Orlando, Florida on December 17, 2024.

EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE