# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| **PHYLLIS KAMINOWITZ**, individually and on behalf of all others similarly situated, | Case No.: 6:23-CV-01446-WWB-EJK |
| Plaintiff, | Hon. Judge Wendy W. Berger |
| v. | |
| **ARX PATIENT SOLUTIONS, LLC, ASSISTRX, INC.,** and **ARX PATIENT SOLUTIONS PHARMACY, LLC** | |
| Defendants. | |

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

PLEASE TAKE NOTICE that Plaintiff Phyllis Kaminowitz ("Plaintiff"), individually and on behalf of the putative class, moves pursuant to Federal Rule of Civil Procedure ("Rule") 23 for an Order: (i) granting final approval of the proposed class action settlement ("Settlement")[1]; (ii) certifying a class for purposes of Settlement; (iii) confirming the appointment of Plaintiff as Class Representative; (iv) confirming the appointment of William B. Federman of Federman & Sherwood as Settlement Class Counsel; (v) finding that the notice given to the Settlement Class complied with Due Process; (vi) entering judgment and dismissing all claims; and (vii)

---

[1] Unless otherwise stated, all capitalized terms shall have the definitions set forth in the Settlement Agreement attached as Exhibit 1 to the Declaration of William B. Federman in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 48). Citations to the Settlement Agreement will be abbreviated as "SA, ¶ ___."

granting such other relief and further relief as the Court deems proper.

## I.  INTRODUCTION

On February 6, 2025, this Court preliminarily approved a proposed class action settlement between Plaintiff and the putative class on one hand, and Defendants ARX Patient Solutions, LLC, AssistRX, Inc., and ARX Patient Solutions Pharmacy, LLC ("Defendants" or "ARX") on the other. (ECF No. 50). The Settlement provides a very favorable result for the Settlement Class, including substantial monetary benefits and credit monitoring and identity theft protection services. The Court should now take the last step in the settlement approval process and grant final approval of the Settlement.

Under the Settlement, ARX  will make up to $850,000.00 available in monetary relief that will: (i) reimburse Out-of-Pocket Losses up to $600.00 for expenses incurred as a result of the Data Incident (SA, ¶ 14); (ii) reimburse Settlement Class Members for up to three (3) hours of Lost Time spent responding to the Data Incident at a rate of $30.00 an hour (*id.* ¶ 14(b)); and (iii) provide up to $6,500.00 in Extraordinary Loss Reimbursement to Settlement Class Members who experienced loss as a result of identity theft or fraud (*id.* ¶ 15). In addition, all Settlement Class Members are eligible to receive three (3) years of one-bureau credit monitoring and identity theft protection services. (*Id.* ¶ 16). The above payments will be paid on a claims-made basis, not to exceed the Aggregate Cap ($850,000.00). (*Id.* ¶ 13(c)). This is an outstanding result for Plaintiff and the Settlement Class that merits final approval.

The Settlement involved a comprehensive notice program and user-friendly claims process, which have been, and are being, implemented by the Settlement Administrator, Angeion Group LLC ("Angeion"). (*See* Declaration of Nadine Albenze-Smith Re: Implementation of Notice and Administration ("Angeion Decl."), ¶¶ 4–12 (attached hereto as **Exhibit 1**)). The Court-approved notice program provided for direct notice by mail and a media notice program. (*Id.* ¶¶ 6–12). Although not required by the Settlement Agreement, Federman & Sherwood also posted a press release on the firm's website instructing Settlement Class Members to visit the Settlement Website to submit a claim.[2]

Overall, the reaction from the Settlement Class has been positive and strongly supports final approval. The deadline to file an objection to the Settlement was April 16, 2025. (*Id.* ¶ 19). No objections were received. (*Id.*). The deadline to request exclusion from the Settlement is April 25, 2025. (*Id.* ¶ 18). To date, only two (2) Settlement Class Members have requested exclusion. (*Id.*).

Considering the valuable benefits conveyed to Settlement Class Members, and the significant risks faced through continued litigation, the Settlement is fair, reasonable, and adequate, and should receive final approval.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The underlying litigation stems from a data security incident experienced by ARX. According to ARX, in March 2022, an employee email account was

---

[2] *Federman & Sherwood Announces Settlement in ARX Patient Solutions Class Action* (April 3, 2025), https://www.federmanlaw.com/blog/federman-sherwood-announces-settlement-in-arx-patient-solutions-class-action/.

compromised and accessed by an unauthorized third party. (First Am. Class Action Compl. ("Compl."), ¶ 31, ECF No. 27). Within the compromised and accessed employee email account laid the protected health information ("PHI") and personally identifiable information ("PII") of Plaintiff and the Class. (*Id.* ¶¶ 1–4). In or around late June 2023, ARX issued formal notice of the Data Incident to Plaintiff and approximately 41,166 other individuals (the "Class" or "Settlement Class"). (*Id.* ¶¶ 1, 6–7).

On July 28, 2023, Plaintiff filed a class action lawsuit against ARX, alleging ARX failed to adequately protect Plaintiff's and the Class's PII from unauthorized access. (*See* Class Action Complaint, ECF No. 1). Plaintiff filed her First Amended Class Action Complaint on October 17, 2023, asserting the following claims for relief: (i) negligence; (ii) unjust enrichment; (iii) breach of implied contract; (iv) violation of the Florida Deceptive and Unfair Trade Practices Act; and (v) declaratory judgment. (*See* Compl. ¶¶ 127–99). In response, ARX filed a Motion to Dismiss (ECF No. 29), which Plaintiff opposed (ECF No. 32).

Prior to engaging in mediation and reaching the Settlement, the parties conducted meaningful informal discovery.[3] (Decl. of William B. Federman in Support of Pl.'s Unopposed Mot. for Preliminary Approval of Class Action Settlement ("Federman Decl."), ¶ 4, ECF No. 48). On November 13, 2023, Plaintiff served informal discovery requests on Defendants. (*Id.*). On November 29, 2023, Defendants

---

[3] The parties also exchanged Initial Disclosures pursuant to Rule 26 on October 16, 2023. (Federman Decl., ¶ 4).

4

served informal discovery requests on Plaintiff. (*Id.*). Thereafter, both parties exchanged documents and information responsive to these informal discovery requests, allowing them to fully evaluate the strengths and weaknesses of their position. (*Id.*).

On December 21, 2023, the parties engaged in a full day mediation session with Christopher L. Griffin of Griffin Mediation (the "Mediator"). (*Id.* ¶ 5). Although a settlement was not reached at the mediation, considerable progress was made. (*Id.*). Significant arm's-length settlement negotiations took place between the parties in the weeks following the mediation, including with the assistance of the Mediator. (*Id.*). The parties were successful in reaching an agreement in principle to resolve the Action in the weeks following the mediation. (*Id.*). The terms of the settlement reached are memorialized in the Settlement Agreement, which was negotiated at arm's-length, in good faith and without collusion, by capable and experienced counsel, with full knowledge of the facts, the law, and the inherent risks in the Litigation, and with the active involvement of the Parties. (*Id.*).

Plaintiff filed a Motion for Attorneys' Fees, Costs, and Service Award[4] on April 9, 2025, requesting $280,500.00 in attorneys' fees and expenses. Since the filing of this motion, the parties were able to agree on the amount of attorneys' fees and expenses Class Counsel were permitted to seek. After days of negotiations, ARX agreed to pay

---

[4] While the parties did not initially agree on the amount of attorneys' fees, costs, and expenses Class Counsel was permitted to request under the Settlement Agreement, the parties did agree that Class Counsel was permitted to request a Service Award for the Class Representative in the amount of $2,000.00, to be paid separate and apart from the Aggregate Cap. (SA, ¶ 51).

up to $210,000.00 in attorneys' fees, costs, and expenses (subject to Court approval), which will be paid separate and apart from the Aggregate Cap. This amount results in a negative lodestar multiplier for Class Counsel.

## III.    THE SETTLEMENT TERMS

### A. Definition of the Settlement Class.

Plaintiff requests certification, for settlement purposes only, a nationwide class of approximately 41,166 individuals, defined as follows:

> [A]ll persons residing in the United States whose protected health information or personally identifiable information was potentially compromised in the Data Incident impacting ARX Patient Solutions, LLC, ASSISTRX, Inc., and/or ARX Patient Solutions Pharmacy, LLC, that was discovered in or around March 2022.

(SA, ¶ 13(dd)).

### B. Benefits to the Settlement Class.

#### 1.  Reimbursement of Out-of-Pocket Losses.

Settlement Class Members may submit a claim for reimbursement for Out-of-Pocket Losses, not to exceed $600.00. (*Id.* ¶ 14). To receive reimbursement for Out-of-Pocket Losses, Settlement Class Members need only submit a valid Claim Form, and documentation supporting the loss.[5] (*Id.* ¶ 14(a)).

#### 2.  Reimbursement of Extraordinary Losses.

Settlement Class Members may also submit a claim for reimbursement for

---

[5] '"Self-prepared" documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but may be considered to add clarity to or support to other submitted documentation. Out-of-Pocket Losses that are compensated under this Settlement Agreement are those that are reasonable and customarily incurred when responding to this type of Data Incident and which occurred on or after March 23, 2022." (SA, ¶ 14(a)).

Extraordinary Losses up to $6,500.00. (*Id.* ¶ 15). To receive reimbursement a Settlement Class Member must submit a Claim Form and supporting documentation showing:  (i) the loss is an actual, documented, and unreimbursed monetary loss; (ii) the loss was more likely than not caused by the Data Incident; (iii) the loss occurred during March 23, 2022, through the date of the end of the Claims Period; (iv) the loss is not already covered by one or more of the exemplar items listed in the Out-of-Pocket Losses category; and (v) the Settlement Class Member made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance. (*Id.* ¶ 13(p)).

### 3.  Reimbursement for Lost Time.

Additionally, all Settlement Class Members may submit a claim for reimbursement of Lost Time up to three (3) hours at $30.00 per hour (a maximum of $90.00 per Settlement Class Member). (*Id.* ¶ 14(b)). Settlement Class Members may receive reimbursement of Lost Time with a brief description of (i) the action taken in response to the Data Incident; (ii) the time associated with each action; and (iii) an attestation. (*Id.*).[6]

### 4.  Credit Monitoring and Identity Theft Protection.

All Settlement Class Members are automatically eligible to receive, free of charge, three (3) years of one-bureau credit monitoring and identity-protection services. (*Id.* ¶ 16).

---

[6] Subject to the cap of $600.00 for Out-of-Pocket Losses. (SA, ¶ 14).

## 5. Aggregate Cap.

The settlement benefits above are subject to a generous Aggregate Cap of $850,000.00. (*Id.* ¶ 13(c)). Notably, the cost of Notice to the Settlement Class, any Service Award approved by the Court, any attorneys' fees, costs, and expenses approved by the Court, and the cost of the Remedial Measures ARX has or will implement will be paid for *outside* of the Aggregate Cap. (*Id.* ¶¶ 17, 26, 51).

## 6. Remedial Measures.

ARX has provided or will provide additional remedial measures as set forth below:

a. In response to the Data Incident, ARX will apply the principle of least privilege.[7]
b. ARX will implement appropriate firewalls to restrict access to authorized only.
c. ARX will update its data security policies to discourage employees from sending emails attaching PII and PHI.
d. ARX will ensure multi-factor authentication is implemented and used by all employees.

(*Id.* ¶ 17). The costs associated with implementing and/or maintaining these remedial measures will be paid separate and apart from the Aggregate Cap. (*Id.*).

## IV. APPLICABLE LAW

When evaluating a motion for final approval of a class action settlement, the court first evaluates whether certification of a settlement class is appropriate under Federal Rule of Civil Procedure 23(a) and (b). *Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1306 (S.D. Fla. 2015). Class certification is proper when the proposed class

---

[7] The principle of least privilege is a concept in computer security that limits users' access rights to only what is strictly required to do their jobs.

meets all the requirements of Rule 23(a) and one or more subsections of Rule 23(b).

*Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1267 (11th Cir. 2019). Rule 23(a) requires:

(1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.

Fed. R. Civ. P. 23(a)(1)–(4). Rule 23(b)(3) requires that (1) "the questions of law or

fact common to class members predominate over any questions affecting only

individual members" and (2) "a class action is superior to other available methods for

fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The

Eleventh Circuit also requires that the class representative has standing to sue and that

the proposed class is adequately defined and clearly ascertainable. *See Prado-Steiman ex*

*rel Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000); *Little v. T-Mobile USA, Inc.*, 691

F.3d 1302, 1304 (11th Cir. 2012).

If certification of a settlement class is appropriate, a court then determines if the

proposal is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To do so, the

Court considers whether:

> (A) the class representatives and class counsel have adequately
> represented the class; (B) the proposal was negotiated at arm's length; (C)
> the relief provided for the class is adequate, taking into account: (i) the
> costs, risks, and delay of trial and appeal; (ii) the effectiveness of any
> proposed method of distributing relief to the class, including the method
> of processing class-member claims; (iii) the terms of any proposed award
> of attorney's fees, including timing of payment; and (iv) any agreement
> required to be identified under Rule 23(e)(3); and (D) the proposal treats
> class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Furthermore, the Eleventh Circuit "instruct[s] district courts

to consider several additional factors." *In re Equifax Inc. Customer Data Sec. Breach Litig.*,

999 F.3d 1247, 1273 (11th Cir. 2021) (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). These additional factors are:

> there was no fraud or collusion in arriving at the settlement and ... the settlement was fair, adequate and reasonable, considering (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986 (the "*Bennett* factors").

As stated above, the Court granted preliminary approval of the Settlement on February 6, 2025. (ECF No. 50; *see also* ECF No. 49). In doing so, the Court made a preliminary finding that the Settlement met the Rule 23 requirements, and that the Settlement was preliminarily fair, adequate, and reasonable. Since then, nothing has changed that would disturb the Court's preliminary findings. The Settlement is worthy of final approval.

## V.    ARGUMENT AND AUTHORITIES

### A. Rule 23(a) Requirements are Met for Settlement Purposes.

***Standing.*** [A]ny analysis of class certification must begin with the issue of standing." *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir. 1987). To satisfy Article III standing, a plaintiff must "(1) suffer[] an injury in fact, (2) that is fairly traceable to the challenged conduct of defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiff extensively argued she had Article III standing in her Opposition to Defendants' Motion to

Dismiss. (*See* ECF No. 32). For the reasons stated therein, the standing requirement is met.

*Numerosity*. The next prerequisite is that the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This requirement is "a generally low hurdle" and "less than twenty-one is inadequate ... [and] more than forty is adequate..." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) (internal quotations and citation omitted). The Settlement Class here includes over 41,000 individuals, satisfying the numerosity requirement.

*Ascertainability*. A class must be "adequately defined and clearly ascertainable." *Little*, 691 F.3d at 1304. Identifying Settlement Class Members here is simple and objective: Defendants have a list of all individuals to whom it sent notice that their information was compromised in the Data Incident. As such, ascertainability is satisfied.

*Commonality*. Next, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23 (a)(2). Commonality may be shown when the claims of all class members "depend upon a common contention," with "even a single common question" sufficing. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545, 2557 (2011). The common contention must be capable of class-wide resolution and the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2545. Here, Plaintiff's claims turn on the adequacy of ARX's data security in protecting Plaintiff's and the Class's PII/PHI. Evidence to resolve that claim does not vary among class members, and so can be

11

fairly resolved, at least for purposes of settlement, for all Settlement Class Members at once. Thus, commonality is met.

**Typicality.** A class representative's claims must also be typical of the putative class they seek to represent. Fed. R. Civ. P. 23(a)(3). This requirement "measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003) (citation omitted). Class members' claims need not be identical to satisfy this requirement. *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012). Instead, "[a] sufficient nexus is established if the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Plaintiff's interests are aligned with the Settlement Class because she received a notice letter that her PHI/PII may have been compromised as a result of the Data Incident and was therefore impacted by the same allegedly inadequate data security that allegedly harmed the rest of the Settlement Class. Thus, Typicality is met.

**Adequacy.** Finally, Rule 23(a)(4) requires that "the representative parties … fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[C]lass counsel and the class representatives are adequate representatives of the class if (1) 'plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation' and (2) the plaintiffs lack 'interests antagonistic to those of the rest of the class.'" *Holman v. Student Loan Xpress, Inc.*, No. 8:08-cv-305-T-23MAP, 2009 WL 4015573, at *2 (M.D. Fla. Nov. 19, 2009) (quoting *Kirkpatrick v. J.C. Bradford & Co.*,

827 F.2d 718, 726 (11th Cir. 1987)). The Class Representative here has no conflicts with the Settlement Class and has demonstrated her adequacy by: (i) selecting well-qualified counsel; (ii) producing information and documents to Class Counsel to permit investigation and development of the complaints; (iii) being available as needed throughout the litigation; and (iv) monitoring the litigation. (Federman Decl., ¶ 12). Moreover, Class Counsel is adequate because of his vast experience as a vigorous class action litigator. (*See id.* at Ex. 2).  Both Plaintiff and Class Counsel are well suited to advocate on behalf of the Settlement Class.

### B.  Rule 23(b) Requirements Are Met for Purposes of Settlement.

#### i.  *Common Questions of Law and Fact Predominate.*

A predominance inquiry looks at "the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement." *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997). To satisfy Rule 23(b)(3)'s predominance prong, the court must find that issues subject to generalized proof applicable to the class as a whole "predominate over those issues that are subject only to individualized proof." *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) (quotation omitted). "[C]ommon issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016)).

All Settlement Class Members allege their PHI/PII was compromised in the Data Incident and that the data security practices at issue did not vary from person to

person. Simply put, all Class Members put their data in the same box. The box was either protected or unprotected in accordance with applicable law and industry standards, so whether there was a breach of a duty will not differ among class members. Thus, because these common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis. Thus, the predominance requirement is readily satisfied.

### ii. *A Class Action is the Superior Method of Adjudication.*

Moreover, certification of this suit as a class action is superior to other methods to fairly, adequately, and efficiently resolve the claims asserted. To satisfy the superiority requirement of Rule 23(b)(3), a movant must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Adjudicating individual actions here is impracticable: the amount in dispute for individual class members is too small, the technical issues involved too complex, and the expert testimony and document review too costly. The individual amounts are insufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of competent counsel. Rather, individual prosecution of claims would be prohibitively expensive, needlessly delay resolution, and may lead to inconsistent rulings.[8] Thus, the Court should certify the Class pursuant to Rule 23(b)(3).

---

[8] Because this Action is being settled on a class-wide basis, such theoretical inefficiencies are resolved—and the Court need not consider further issues of manageability relating to trial. *See Amchem*

**C. The Rule 23(e) Factors and the *Bennet* Factors are Satisfied.**

With Rule 23 satisfied, the Court segues into determining if the Settlement is fair, adequate, and reasonable under Rule 23(e)(2) and the corresponding *Bennett* factors. Courts have substantial discretion in approving a settlement agreement. *Bennett*, 737 F.2d at 986. In exercising this discretion, courts consider the "strong judicial policy favoring settlement as well as ... the realization that compromise is the essence of settlement." *Id.* (citation omitted). Courts also "give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks." *Pierre-Val v. Buccaneers Ltd. P'ship*, No. 8:14-cv-1182, 2015 WL 3776918, at *1 (M.D. Fla. June 17, 2015) (citations omitted).

### 1. Fed. R. Civ. P. 23(e)(2)(A): Plaintiff and Class Counsel Adequately Represented the Class.

The first factor heavily weighs in favor of granting final approval because both Class Counsel and the Class Representative have adequately represented the Class. Class Counsel have adequately represented the Class by fully investigating the facts and legal claims; preparing the complaints; researching and briefing an opposition to ARX's motion to dismiss; requesting, obtaining, and reviewing informal discovery from ARX; drafting a comprehensive mediation statement assessing the legal and factual strengths and weaknesses of the case; and participating in mediation and a lengthy negotiation process. (Federman Decl., ¶¶ 4–7). Additionally, the Class

---

*Prods.*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems").

Representative has also demonstrated her adequacy by: (i) selecting well-qualified counsel; (ii) producing information and documents to Class Counsel to permit investigation and development of the pleadings; (iii) being available as needed throughout the litigation; and (iv) monitoring the litigation. Thus, the first *Bennett* factor weighs in favor of granting final approval. (*Id.* ¶ 12).

### 2. Fed. R. Civ. P. 23(e)(2)(B): the Settlement was Negotiated at Arm's Length and is Free From Collusion.

The proposed settlement was negotiated at arm's length, without collusion, and with the assistance of a qualified and respected mediator, Chrisotpher L. Griffin. (Federman Decl., ¶ 5). As part of the mediation process, the Parties exchanged and provided the mediator with detailed mediation statements outlining the strengths and weaknesses of their claims and defenses and exchanged informal discovery. *Id.* The fact that the Settlement was achieved through well-informed and arm's-length neutrally supervised negotiations weighs in favor of granting final approval under Rule 23(e)(2)(B). *See Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015) (affirming approval of class wide settlement agreement where "the parties settled only after engaging in extensive arms-length negotiations moderated by an experienced, court-appointed mediator").

### 3. Fed. R. Civ. P. 23(e)(2)(C)(i) and *Bennett* Factors 1–4: the Relief Provided is Adequate.

When considering the likelihood of success at trial, the complexity, expense, and duration of the litigation, the relief provided is exceptionally reasonable. Simply stated, this case could drag on for years. Pre-trial litigation would be extensive, with

voluminous discovery needed from ARX and any third-party companies that ARX has used in an information technology capacity. Experts would be required to testify regarding ARX's data security practices, industry standard practices, and how its practices deviated therefrom. Substantial fact-finding would be required into what PII/PHI was taken, how, and what impact this had and will have on the Settlement Class. Plaintiff would need to survive potential dispositive motions and prevail on a motion for class certification. Such motion practice, and potential appeals, could consume years, during which the law could change and threaten the claims. Given the complexity of the claims and arguments here, a lengthy trial would follow. Litigation would be extraordinarily complex, and it could take several years for the Class to see any real recovery, if any at all. Thus, the anticipated potential litigation here favors approval. (Federman Decl., ¶ 10).

While Plaintiff is confident in her claims, there is risk here, as is true in all complex class actions—and this area of law is especially risky. *See, e.g.*, *Gordon v. Chipotle Mexican Grill, Inc.,* No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex."); *Fulton-Green v. Accolade, Inc.*, No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (noting data breaches are a "risky field of litigation" because they "are uncertain and class certification is rare."); *Fox v. Iowa Health Sys.*, No. 3:18-CV-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result."). Due at least in part to the cutting-edge nature of data protection technology and rapidly evolving law, data

breach cases like this one face substantial hurdles—even just to make it past the pleading stage. *See, e.g.*, *Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 RMB RLE, 2010 WL 2643307, at *1–2 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the motion to dismiss and summary judgment stage). Class certification posed another risk to the success of Plaintiff's claims and has been fatal in other data breach cases. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) (denying class certification in data breach class action); *Gaston v. FabFitFun, Inc.*, 2021 WL 6496734, at *3 (C.D. Cal. Dec. 9, 2021) ("Historically, data breach cases have experienced minimal success in moving for class certification."); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying motion for class certification in large data breach class action); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-02972-JFA, 2024 WL 5247287 (D.S.C. Dec. 30, 2024) (denying motion for leave to file a renewed motion for class certification). "[T]hrough the Settlement, Plaintiffs and Class Members gain benefits without having to face further risk." *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2023 WL 4420348, at *8 (S.D. Fla. July 8, 2023). Thus, given this risk and uncertainty, settlement is the more prudent course when a reasonable one can be reached.

In light of the above, the $850,000.00 achieved and made available to the Settlement Class is an outstanding result. (Federman Decl., ¶ 6). The Settlement equates to an approximate value of $20.65 per Settlement Class Member—which exceeds data breach settlements approved by this Court and elsewhere. *See, e.g.*, *In re*

*Lincare Holdings Inc. Data Breach Litig.*, No. 8:22-CV-01472-AAS, 2024 WL 3104286 (M.D. Fla. June 24, 2024) (approximately $3.06 per class member); *Desue*, 2023 WL 4420348 (approximately $0.75 per class member); *Stoll v. Musculoskeletal Inst.*, No. 8:20-CV-1798-CEH-AAS, 2022 WL 16927150 (M.D. Fla. July 27, 2022), *report and recommendation adopted sub nom. Stoll v. Musculoskeletal Inst., Chartered*, No. 8:20-CV-1798-CEH-AAS, 2022 WL 16923698 (M.D. Fla. Nov. 14, 2022) (approximate per person recovery of $6.18). These cases underscore the exemplary resolution for the Settlement Class that was achieved here and tip the scale in favor of final approval.

> **4. Fed. R. Civ. P. 23(e)(2)(C)(ii)–(iv) and Fed. R. Civ. P. 23(e)(2)(D): the effectiveness of any proposed method of distributing relief to the class, the terms of any proposed award of attorney's fees, including timing of payment, any agreement required to be identified under Rule 23(e)(3)[9] and class members are treated equitably relative to each other.**

Moreover, the method of distributing the settlement benefits will be equitable and effective. As explained above, all Class Members are eligible to make a claim for Out-of-Pocket Losses, Lost Time, Extraordinary Losses, and Credit Monitoring. The task of validating those claims will be delegated to the Settlement Administrator, a neutral party which has significant experience processing these claims in similar cases. The only difference in treatment among Class Members is that those who incurred and submit a claim for Out-of-Pocket Loss, Extraordinary Loss, and Lost Time will—appropriately and equitably—receive payments in proportion to the amount of their

---

[9] Other than the Settlement Agreement, there are no other agreements required to be identified under Rule 23.

losses. Additionally, and if approved by the Court, Plaintiff will receive a Service Award of $2,000.00 for her service as a Class Representative. Service awards are typically and frequently granted in this Court. *See Venerus v. Avis Budget Car Rental, LLC*, No. 6:13-CV-921-CEM-RMN, 2023 WL 4673481, at *2 (M.D. Fla. May 25, 2023); *Arnold v. State Farm Fire & Cas. Co.*, No. 2:17-CV-148-TFM-C, 2023 WL 7308098, at *1 (S.D. Ala. Nov. 6, 2023) ("The Court notes some contradictory legal authority based on the recent holdings in *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020). Specifically, *Johnson* held that awards that compensate a class representative for his time are prohibited. *See Johnson*, 975 F.3d at 1260. However, *Johnson* was in the context of federal claims brought under the Telephone Consumer Protection Act, 47 U.S.C. § 227. *Id.* at 1249. Following Johnson, a number of district courts in the Eleventh Circuit have found class representative service awards are still permitted under certain circumstances. The Court agrees with its several sister courts in this Circuit that *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020), is inapplicable in diversity jurisdiction cases where the underlying claims arise under state law."); *see also James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-SDM-JSS, 2017 WL 2472499, at *2 (M.D. Fla. June 5, 2017) (incentive award of $5,000); *N. Star Capital Acquisitions, LLC v. Krig*, No. 3:07-cv-264-TJC-MCR, 2011 WL 65662, at *6 (M.D. Fla. Jan. 10, 2011) (incentive award of $5,000.00). For these reasons, the plan of distribution is both equitable and effective.

As stated above, ARX has agreed to pay up to $210,000.00 in attorneys' fees, costs, and expenses to Class Counsel, subject to Court approval. If approved, this

amount will not reduce the funds made available to the Settlement Class and will be paid completely separate and apart from the Aggregate Cap.

### 5. *Bennet* **Factor 5: the substance and amount of opposition to the settlement.**

To date, the Settlement has been well-received by the Settlement Class. The deadline to file an objection to the Settlement was April 16, 2025. (Angeion Decl., ¶ 19). No objections were received. (*Id.*). The deadline to request exclusion from the Settlement is April 25, 2025. (*Id.* ¶ 18). To date, only two (2) Settlement Class Members have requested exclusion. (*Id.*). So far, a total of 394 claims have been submitted by Settlement Class Members.[10] (*Id.* ¶ 17). The number of claims submitted is expected to increase since the deadline to submit a claim is not until May 26, 2025. (*Id.*). Therefore, the lack of opposition to the Settlement supports final approval.

### 6. *Bennett* **Factor 6: the stage at which the settlement was achieved.**

Although the Parties reached a settlement before the end of the discovery period, Class Counsel made an informed decision regarding the appropriateness of

---

[10] At this very early stage in the claims period, this puts the claims rate at approximately 1%. However, this is still on par with the typical claims rate in data breach settlements, which is typically between 1–3%. *See, e.g.*, *Weisenberger v. Ameritas Mut. Holding Co.*, No. 4:21-CV-3156, 2024 WL 3903550, at *3 (D. Neb. Aug. 21, 2024) (approving claims rate of approximately 1.25% and noting that it was not unusual for a data breach case); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020) (granting final approval with 0.83% claims rate, stating that the rate was "on par with other consumer cases, and d[id] not otherwise weigh against approval"); *In re Forefront Data Breach Litig.*, No. 21-CV-887, 2023 WL 6215366, at *4 (E.D. Wis. Mar. 22, 2023) ("A claims rate of 1.46% is generally in line with the rate experienced in other data breach class actions."); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-md-2522, 2017 WL 2178306, at *1–2 (D. Minn. May 17, 2017), *aff'd*, 892 F.3d 968 (8th Cir. 2018) (approving settlement with roughly 0.23% claims rate); *Carter v. Vivendi Ticketing US LLC*, No. SACV2201981CJCDFMX, 2023 WL 8153712, at *9 (C.D. Cal. Oct. 30, 2023) (claims rate of 1.56%). Settlement Class Counsel will provide an update to the Court at the Final Fairness Hearing.

settlement. Prior to negotiating the Settlement, Class Counsel sought and obtained informal and formal discovery from ARX on a number of topics, including: the number of individuals whose PII/PHI was compromised during the Data Incident; the types of PII/PHI potentially compromised; the mechanics of the Data Incident; the remedial actions ARX took after the Data Incident; and the terms of any potentially applicable insurance coverage. (Federman Decl., ¶ 7). Class Counsel thoroughly evaluated this in their analysis of damages. (*Id.*). Through the above process and the mediation, Class Counsel came to understand the size of the Settlement Class, the issues at hand, and obtain an excellent settlement for class members. (*Id.* ¶¶ 4–13). Thus, the Court should find that Class Counsel conducted sufficient fact-finding at this stage in the litigation. *See In re Home Depot, Inc. , Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2017 WL 9605206, at *3 (N.D. Ga. Sept. 22, 2017) (approving data privacy settlement where class counsel did not conduct formal discovery but "had sufficient information to evaluate the proposed settlement."); *Luse v. Sentinel Offender Servs., LLC*, No. 2:16-CV-30-RWS, 2017 WL 11629203, at *8 (N.D. Ga. Aug. 21, 2017) (granting final approval of settlement reached "relatively early in the litigation" because it was "the product of good-faith, arm's-length negotiations assisted by an experienced and neutral mediator.").

## VI.    THE NOTICE PROGRAM WAS SUCCESSFULLY EXECUTED

Lastly, the Court should find that the notice program provided the best notice practicable under the circumstances and comported with Due Process.

On May 3, 2024, Angeion sent CAFA notice to the Attorneys General of all states and territories, as well as the United States Attorney General. (Angeion Decl., ¶ 4). On or about February 10, 2025, ARX provided Angeion with an electronic data file containing 63,830 Settlement Class Member records. (*Id.* ¶ 5). The records contained the names, and where available, mailing addresses for Settlement Class Members. (*Id.*). Angeion analyzed the data file, and removed duplicative records, resulting in 41,687 unique Settlement Class Member records. (*Id.*). Of the 41,687 unique records, 23,633 included name and mailing address information, while 18,054 records included a name and no mailing address information. (*Id.*).

On February 24, 2025, Angeion caused the Class Notice to be mailed via the United States Postal Service ("USPS") first class mail, postage prepaid, to 23,633 Settlement Class Members with address information provided on the Class List. (*Id.* ¶ 6). The Class Notice was formatted as a postcard ("Postcard Notice"). (*Id.*). Prior to mailing, the Settlement Class Member mailing addresses were processed through the USPS National Change of Address database to identify updated addresses for individuals who have moved within the last four years and who filed a change of address card with the USPS. (*Id.* ¶ 7). Postcard Notices that were returned by the USPS as undeliverable with a forwarding address were re-mailed to that forwarding address. Postcard Notices that were returned by the USPS without a forwarding address were subjected to an address verification search ("skip trace") in an attempt to locate an updated address. (*Id.* ¶ 8). As a result of the above-described efforts, of the 2,093 Postcard Notices returned as undeliverable by the USPS, 1,404 were re-mailed to

updated addresses. (*Id.*). Angeion will continue to receive, process and re-mail Postcard Notices returned as undeliverable by the USPS. (*Id.*).

In addition to the direct mail notice, on February 21, 2025, Angeion caused the comprehensive media notice campaign to commence. The media notice campaign consists of internet banner advertisement notice, social media notice via Facebook and Instagram, and a paid search campaign via Google. (*Id.* ¶ 10). The media campaign is scheduled to run for approximately three (3) months, concluding on or around May 26, 2025. (*Id.* ¶ 11). As of the date of Angeion's Declaration, the media notice has served approximately 4,643,071 impressions. (*Id.* ¶ 12).

Furthermore, Angeion established a dedicated Settlement Website where Settlement Class Members could submit a claim, view case related deadlines, and download important case documents. (*Id.* ¶ 13). The Settlement Website also has a "Contact Us" page whereby Settlement Class Members can send an email with any additional questions to a dedicated email address. (*Id.*). Settlement Class Members were also able to call a toll-free hotline to obtain responses to frequently asked questions and provide essential information regarding the Settlement. (*Id.* ¶ 16).

Considering the above, Plaintiffs submit the notice program meets the requirements of Federal Rule of Civil Procedure 23 and Due Process and merits final approval.

## VII.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of the Settlement.

Dated: April 22, 2025          Respectfully submitted,

                    */s/: William B. Federman*
                    William B. Federman (*pro hac vice*)
                    **FEDERMAN & SHERWOOD**
                    10205 N. Pennsylvania Avenue
                    Oklahoma City, OK 73120
                    T: (405) 235-1560
                    wbf@federmanlaw.com
                    ***Counsel for Plaintiff and the Class***

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2025, a true and correct copy of the foregoing was electronically filed and served using CM/ECF.

                    */s/ William B. Federman*
                    William B. Federman

## LOCAL RULE 3.01(g) CERTIFICATION

I hereby certify that on April 21, 2025, Counsel for Plaintiff conferred with Counsel for Defendants, who do not oppose the relief sought herein. Consistent with Section XVI of the Settlement Agreement, however, such non-opposition shall not be construed as an admission of liability or an admission of any claim or defense.

                    */s/ William B. Federman*
                    William B. Federman